158

UNITED STATES, Appellee

v.

Alva Z. McGRATH, Technical Sergeant
U.S. Air Force, Appellant.

No. 68,260.
CMR No. 28358.

U.S. Court of Military Appeals.

Argued Oct. 5, 1993.

Decided May 6, 1994.

For Appellant: *Captain Ursula P. Moul* (argued); *Colonel Terry J. Woodhouse* (on brief); *Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock, Captain Marc. A. Fox.*

For Appellee: *Major John H. Kongable* (argued); *Colonel Richard L. Purdon* and *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

COX, Judge:

At his trial, appellant, through various legal maneuvers, attempted to block the victim from testifying at the court-martial. Failing that, when offered the opportunity to cross-examine her, he declined. On this appeal, he now argues he was denied his Sixth Amendment right to be confronted by the victim at trial. As a result of this alleged denial, he contends that two of the victim's out-of-court statements should have been ruled inadmissible.[1] The exclusion of those statements, in turn, would leave his own pretrial confession "uncorroborated"—and thus inadmissible under Mil.R.Evid. 304(g).[2] We dispute that the

1.  The granted issue asks:

    WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING INTO EVIDENCE APPELLANT'S 9 JUNE 1989 STATEMENT AND THE 9 JUNE 1989 AND 20 JUNE 1989 STATEMENTS PURPORTEDLY GIVEN TO AGENTS OF THE AIR FORCE OFFICE OF

SPECIAL INVESTIGATIONS BY THE PUTATIVE VICTIM.

2.  Mil.R.Evid 304(g), Manual for Courts–Martial, United States, 1984, provides in pertinent part as follows:

    An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence

Confrontation Clause is so malleable; and we affirm appellant's conviction.

## I

Appellant stands convicted of multiple sexual offenses perpetrated on his natural daughter, A, who was between the ages of 13 and 14 at the time of the offenses.[3] Essentially, the victim made two sworn statements in June 1989 detailing appellant's misconduct, which allegedly occurred in the Federal Republic of Germany over the preceding year-and-a-half. When confronted by the authorities, appellant made a six-page, handwritten confession. There is no issue before us regarding the voluntariness of this confession.

Appellant was tried by a military judge sitting alone as a general court-martial at Hahn Air Base, Federal Republic of Germany. The court-martial opened on November 15, 1989, with the defense moving to suppress appellant's confession. Counsel's basis for the motion was:

"We do not believe it can be properly corroborated."

The Government's response was that the confession was corroborated by the victim's pretrial statements. The Government's first witness was the victim, A.

She identified herself and stated: that she was appellant's 14-year-old daughter; that, until June 1989, she had been living with appellant "in the same household" in the Federal Republic of Germany; that, commencing in June 1989, she lived in a foster home for several months [in Germany]; and that recently she had moved back into the family home with her stepmother (appellant's wife), her two stepbrothers, and her stepsister. Appellant "was basically living in a dormitory" when she returned to the home.

When asked by the prosecutor if she had made "statements against" appellant in June 1989, she "refuse[d] to answer" the question. When asked if she "wish[ed] to retract" anything from the statements, she "refuse[d] to answer."

She acknowledged that she had "receive[d] an order from the German court" to appear at the court-martial and that was "the reason" she was present. She stated that she had "indicated" to the military prosecutor the day before the court-martial that she "had no intention of testifying against ... [her] father." She said that her reason for not wishing to testify was to avoid "the potential harm it could do to ... [her] father" and that she "didn't want to hurt ... [her] family any more."

She also acknowledged, however, that she had taken "an oath back in June of this year"; that she had "promise[d] to tell the truth back then"; and that she had not lied under that June oath.

only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth.... If the independent evidence raises as inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence.

3. The first specification alleged carnal knowledge on divers occasions over a 5-month period; the second specification alleged sodomy on divers occasions over the same 5-month period; the third and fourth specifications alleged committing indecent acts upon the body of the victim on divers occasions over periods of 1 year and of 1 and ½ months, respectively; the final specification alleged taking indecent liberties with the victim on divers occasions over a 17-month period. *See* Arts. 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, and 934, respectively. Contrary to his pleas, appellant was convicted of these charges by a military judge sitting as a general court-martial at Hahn Air Base, Federal Republic of Germany. The judge sentenced appellant to a dishonorable discharge, confinement for 10 years, and reduction to E-1; the convening authority approved this sentence.

The Court of Military Review, in an unpublished 10-page opinion, found the evidence overwhelming that appellant *attempted* to commit carnal knowledge on the victim, but that court was not convinced beyond a reasonable doubt that penetration was achieved. Accordingly, the court affirmed the lesser-included offense of attempted carnal knowledge, Art. 80, UCMJ, 10 USC § 880. Unpub. op. at 8-9. The remaining charges and specifications were also affirmed. Reassessing the sentence, the court below affirmed the sentence except for confinement exceeding 9 years.

At this juncture in the proceedings, trial counsel requested the military judge to "make inquiry of the witness and, if necessary, give an order to the witness to testify in this case." The defense promptly requested a session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), "for purposes of judicial notice of German law and to discuss other matters...."

The discussion during the Article 39(a) session centered on the victim's apparent privilege under German law not to testify against her father, an issue previously identified and discussed at a pretrial conference. *See* RCM 802, Manual for Courts–Martial, United States, 1984. The prosecution conceded that, under the North Atlantic Treaty Organization's (NATO) Status of Forces Agreement and the pertinent implementing regulations, German law applied to the victim and that, under German law, she had such a privilege. In addition, the prosecution acknowledged that, pursuant to the treaty, the prosecution had been obliged to request the German courts to subpoena the victim to attend the court-martial. The prosecution disputed, however, the contention that the German privilege applied at the court-martial. The prosecution conceded, nevertheless, that neither the military judge nor the German courts had the authority to order the victim to testify should she decline.

The defense acknowledged that

the witness is aware, was aware yesterday, that this was a provision of the German law, based upon her being told that, or having it confirmed by a German social worker....

In addition, defense counsel argued that

since her presence here is premised solely upon the German subpoena, which is the only power that can make her appear here, that she needs to be instructed under the German law of her rights and see if that is what she is essentially, in her inexperienced, perhaps unsophisticated way, is attempting to convey to this court. If so, Your Honor, we would submit that a motion to strike any testimony she gave without having been advised would be something the defense would raise, but we sub-

mit that there is no power that this court has to order her to testify under American law and, as we know, under German law here today.

Such an order to testify would have been, in the defense's view, "an improper order ... because it cannot be enforced."

The military judge announced his decision "to talk with her and encourage her ... to voluntarily talk," reserving the possibility of "issu[ing] her an order, realizing I may not be able to compel or to punish her for violation of that order." The defense promptly objected, arguing:

Your Honor, the defense concurs that the goal of justice is to have her voluntarily testify, with the emphasis on the word "voluntarily," and we would submit, with all due respect, that if you, sitting up there with your judicial robes in the position of authority over her, give her an order, knowing that you cannot do anything about a refusal, but implying to her that you can, you have taken away, to a certain degree, one which we may not be able to measure, her voluntary choice to testify, under fear of a threat which is no threat. We do not submit that that is voluntary testimony and we would register our objection to that procedure.

When the prosecutor complained that the Government was trying to afford appellant confrontation but that it was the defense that was trying to prevent it, defense counsel countered that the defense did not "write" the rules, but

[w]e are doing everything in our power that is enabled us and allowed us under the law. What we are saying about this witness is, she appears to be the type of person who can be pressured, and we are concerned that inadvertently, or perhaps advertently, the military judge will pressure her into providing testimony which is suspect by the very nature of the pressure.

The witness was then recalled, and the military judge questioned her. He encouraged her to testify, but he did not order her to testify. Indeed, he informed her that he had no power to order her to testify or to punish her for refusing to testify. The vic-

tim told the judge that she had decided herself not to testify against appellant.

Asked about her reasons for not wanting to testify, she mentioned the difficulty of testifying in front of people. When the judge sympathized with her and tried to offer encouragement on that point, she stated:

And the other reason is because I don't want my dad to go to jail.

Again the judge sympathized with her, and she responded:

I can only say that I guess I want my dad to be punished, but I've already talked to my mom about my dad when we have our—when we visit, that way dealing with how he feels and all. She just doesn't do this with me to know what's going on. I know he's been going through a whole lot more with all the charges that have been laid on him.

Again the judge offered sympathy, and she responded:

And I feel maybe that's enough, maybe he has been punished, 'cause he knows *if he tries it again*, it would be a whole lot worse.

(Emphasis added.) She also allowed that "[s]ome of the charges that have been put on him I think are a little heavy."

Asked by the judge if anybody had "sat down with you and said—well, this is what's going to happen if you testify, and this is

what happens if you don't testify?," she responded:

No, I really—I have been told that, but they haven't said—well, your father is going to go to jail if you testify, and he's not going to go to jail if you don't testify and all—but they gave me like an idea like—if you testify, there may be enough evidence to put your father in jail, and if you don't testify, there may not be enough to end up putting your father in jail, and I got the idea that I don't want to testify. I don't want my father in jail.[4]

To the judge's question, "Do you feel if you testified that he might go to jail?," the victim responded: "Yes."

At the conclusion of the judge's questioning of the witness, the defense was offered an opportunity to question her. The defense declined. Ultimately, the military judge received prosecution exhibits 4 and 5 in evidence under the "residual hearsay rule" of Mil.R.Evid. 804(b)(5).[5] *See* Appendix. There are no issues before us pertaining to the correctness of the parties' understanding of German law as it may have applied to the victim or to the military judge's handling of these matters; and we do not decide them.

## II

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ...

---

4. Evidently it was this comment that prompted the Court of Military Review to observe that the victim had received "a short course on the law of evidence and how her testimony or lack thereof would affect the outcome of her father's trial." Unpub. op. at 6.

5. Mil.R.Evid. 804(b)(5) provides:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
\* \* \*
5. *Other exceptions.*
A statement not specifically covered by any of the foregoing exceptions but *having equivalent circumstantial guarantees of trustworthiness*, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of

justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant.
(Emphasis added.)
Mil.R.Evid. 803(24) (availability of declarant as witness immaterial) is virtually identical. The military judge selected Mil.R.Evid. 804(b)(5) due to its technical definition of " 'Unavailability as a witness,' includ[ing] situations in which the declarant ... persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the military judge to do so." *See* Mil.R.Evid. 804(a)(2).

**162**

to be confronted with the witnesses against him."

As the Supreme Court has consistently pointed out:

[I]t is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

*California v. Green*, 399 U.S. 149, 157–58, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970).

Accordingly, the Supreme Court has stressed the primacy of the need to produce the witness at the trial, if at all possible. *Barber v. Page*, 390 U.S. 719, 723, 88 S.Ct. 1318, 1321, 20 L.Ed.2d 255 (1968) (error to admit transcript of witness' prior testimony, where witness in federal prison in adjoining state and state made "no effort" to produce him at trial); *cf. Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Production of the witness solves a myriad of problems. Even though the witness cannot be subject to cross-examination at the point the hearsay statement is made, that fact

cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial. The most successful cross-examination at the time of the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story....

*California v. Green*, 399 U.S. at 159, 90 S.Ct. at 1935–36. *Cf. United States v. Yeauger*, 27 MJ 199, 202 (CMA 1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1638, 104 L.Ed.2d 154 (1989). The *Green* Court, in a case wherein the hearsay declarant was "markedly evasive and uncooperative on the stand," concluded that

the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

399 U.S. at 151 and 158, 90 S.Ct. at 1931 and 1935.

In *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985), a government expert had reached an incriminating conclusion regarding a piece of evidence (a strand of hair), but he could not, at trial, remember which of three possibilities led him to that ultimate conclusion. Fensterer complained that he could not effectively cross-examine, and thus discredit, the expert with respect to his conclusion. The Supreme Court held that Fensterer was not denied confrontation, noting:

"The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Id.* [*Davis v. Alaska*, 415 U.S. 308,] at 315–16 [94 S.Ct. 1105, at 1109–10, 39 L.Ed.2d 347] [ (1974) ] (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940) (emphasis in original)). Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish....

474 U.S. at 19–20, 106 S.Ct. at 294–95. Fensterer's cross-examination of the expert, including "demonstrat[ing] to the jury that ... [the expert] could not even recall the theory on which his opinion was based," was held sufficient to satisfy the Confrontation Clause. *Id.* at 20, 106 S.Ct. at 295.

In *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), an

assault victim made an out-of-court identification of the defendant as his assailant less than a month after the assault. By the time of trial, the victim could remember having identified Owens as his assailant (nearly a month after the attack). However, as a result of the grievous head injuries he suffered in the assault, he could no longer remember having seen his assailant, or indeed any of his numerous visitors, except one (not the accused) while he was in the hospital. The Supreme Court permitted receipt of the out-of-court identification, even though cross-examination was impossible. Quoting from *Fensterer* the Court reiterated that it was the "*opportunity* for effective cross-examination" that was guaranteed by the Confrontation Clause.[6] Even if the victim had no memory, the opportunity guaranteed by the Constitution was offered. "It is sufficient," said Justice Scalia for the Court, "that the defendant has the opportunity to bring out such matters as ... the very fact that he [the witness] has a bad memory." 484 U.S. at 559, 108 S.Ct. at 842.

We likewise have long insisted that the hearsay declarant be produced whenever possible. *United States v. Miller*, 7 USCMA 23, 30, 21 CMR 149, 156 (1956) (two perfunctory phone calls on evening before trial insufficient effort to locate prosecution witness; deposition not admissible); *United States v. Gaines*, 20 USCMA 557, 561–62, 43 CMR 397, 401–02 (1971) (error to receive deposition of prosecution witness, absent showing of actual unavailability, where Government procured witness' departure from country (Viet Nam) and effected his discharge from active duty prior to expiration of his enlistment).

In *United States v. Barror*, 23 MJ 370, 372–73 (CMA 1987), we admonished government counsel generally as follows:

> When difficulties or inconveniences arise in obtaining the witnesses, or when it appears

that they may be "softening" in their position, there may be a certain human tendency—or at least the appearance of one—for prosecutors to relax somewhat their efforts to obtain the witnesses—if they already have admissible accusatory statements in hand. For this reason, we have been quite insistent that all reasonable means of obtaining crucial witnesses' presence be undertaken before we will consider approving substitutes. *See, e.g., United States v. Cokely*, 22 MJ 225 (CMA 1986); *United States v. Hinton*, 21 MJ 267 (CMA 1986).

(Footnote omitted.)

### III

■ In the instant case, the Government did not seek to rely on paper evidence, but rather produced the witness. It is true, of course, that the victim was not subjected to "full and effective cross-examination," *California v. Green*, 399 U.S. at 159, 90 S.Ct. at 1935–36; but then the defense waived cross-examination. Indeed it is clear that examination of the victim, direct or cross, was the very last thing on earth the defense wanted to have happen. Having thus eschewed confrontation, appellant cannot now claim a denial of it. *See United States v. Hines*, 23 MJ 125, 132 (CMA 1986); *cf. United States v. Thevis*, 665 F.2d 616, 632–33 (5th Cir.) (waiver of right to confrontation is "a fortiori" waiver of right to raise hearsay objection), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). As a result of appellant's waiver of cross-examination, we hold that he was not denied his rights under the Confrontation Clause.

### IV

■ The question remains:

What of the victim's pretrial statements received in evidence under Mil.R.Evid.

---

6. Nothing in the Supreme Court's cases supports Chief Judge Sullivan's radical view, 39 MJ at 170, that an accused's mere sense of shifting tactical advantage is all that it takes to override the Supreme Court's opportunity-to-cross-examine benchmark, such that the accused can, on impulse, now decline to cross-examine a ten-

dered witness, or now resurrect the denial-of-confrontation shield, according to his maximal level of comfort at the moment. The accused either has an opportunity to cross-examine at trial, or he does not. Whether he chooses to exercise it is his business.

804(b)(5)?[7] The military judge's extensive findings in that regard, after a lengthy evidentiary hearing into the circumstances surrounding the statements, are attached hereto. *See* Appendix. Generally, these findings address the circumstances surrounding the taking of the statements. In at least two respects, however, the judge made reference to corroborating matters as supporting his conclusions of reliability. One such corroborating matter was the seizure from appellant's belongings of a particular pornographic video described by the victim as having been repeatedly shown to her by appellant. The other—and most significant—corroborating factor was appellant's confession to the very conduct described in the victim's pretrial statements. We now consider whether it was proper to consider such corroboration.

In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court concluded that a particular hearsay statement was improperly received in evidence because the trial judge had relied in part on independent evidence corroborating the declarant's statement. 497 U.S. 817–26, 110 S.Ct. at 3148–51, 3153. Appellant contends that *Wright* bars receipt of A's pretrial statements due to the military judge's reference to corroborating evidence. We disagree.

In *Wright,* the Supreme Court neatly encapsulated its previously developed approach to confrontation-hearsay analysis when it stated:

In *Ohio v. Roberts,* [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980),] we set forth "a general approach" for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. 448 U.S., at 65, 100 S.Ct. at 2538. We noted that the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." *Ibid.* "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ...,

the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ibid.* (citations omitted.) Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.* at 66, 100 S.Ct. at 2539 (footnote omitted); *see also Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

497 U.S. at 814–15, 110 S.Ct. at 3146.

*Wright,* however, was a very different case from the instant one. There, the trial judge conducted a voir dire examination of the victim, 3 years old at the time of trial, and concluded she was "not capable of communicating to the jury." The parties agreed. 497 U.S. at 809, 110 S.Ct. at 3143. Live confrontation of the hearsay declarant was neither formally tendered, as here, nor waived, as here. In the *Wright* circumstances, with the infant not able to testify, the Supreme Court went forward to apply the *Roberts* confrontation analysis *to the proffered hearsay evidence itself* (*i.e.,* the testimony of an examining physician relating the victim's statements to him, offered under Idaho's residual hearsay exception).

In the course of that application, the Supreme Court concluded that

"particularized guarantees of trustworthiness" must be shown from the totality of the circumstances, but *we think the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.*

497 U.S. at 819, 110 S.Ct. at 3148 (emphasis added). For purposes of the Confrontation Clause, in other words, the fact that the 3-year-old's statement was corroborated by other evidence could not be used to bootstrap

---

7. *See* n. 5, *supra.*

its trustworthiness. 497 U.S. at 823, at 110 S.Ct. at 3150.

The *Wright* majority "derive[d]" the foregoing noncorroboration conclusion

> from the rationale for permitting exceptions to the general rule against hearsay:
>
> > "The theory of the hearsay rule ... is that the many possible sources of inaccuracy and untrustworthiness which may lie underneath the bare untested assertion of a witness can best be brought to light and exposed, if they exist, *by the test of cross-examination.* But this test or security may in a given instance be superfluous; it may be sufficiently clear, in that instance, that the statement offered is free enough from the risk of inaccuracy and untrustworthiness, so that the test of cross-examination would be a work of supererogation." 5 J. Wigmore, *Evidence* § 1420, p. 251 (J. Chadbourne rev. 1974).
>
> In other words, if the declarant's truthfulness is so clear from the surrounding circumstances that *the test of cross-examination* would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial.

497 U.S. at 819–20, 110 S.Ct. at 3148–49 (emphasis added).

By its terms, however, the Wigmore comment, like *Wright* itself, plainly relates to circumstances wherein the opportunity for *cross-examination* has been neither provided nor waived. Accordingly, we do not read *Wright* as a blanket assertion that, even in cases where confrontation has been actually provided or waived, hearsay evidence offered under a rule of evidence must itself satisfy Sixth Amendment—*Roberts* confrontation analysis prior to admission. In particular, we see no suggestion in *Wright* that, in such cases, the Sixth Amendment forbids reference to corroborating evidence for a determination of "equivalent circumstantial guarantees of trustworthiness" under the "residual hearsay" evidentiary rules.

Furthermore we would not expect the Confrontation Clause to be so applied to a pure rule-of-evidence question. The military "residual hearsay" rules, after all, are but verbatim copies of their Federal Rules of Evidence counterparts, Fed.R.Evid. 803(24) and 804(b)(5), which rules are applicable to federal civil and criminal cases alike. Since the Confrontation Clause does not apply to civil cases at all, we do not read *Wright* as purporting to engraft Confrontation Clause requirements onto hearsay rules of evidence generally. *Cf. Amcast Industrial Corp. v. Detrex Corp.,* 779 F.Supp. 1519, 1527–28 (N.D.Ind.1991) (motion for summary judgment based on plaintiff's reliance on hearsay to support complaint in action under Comprehensive Environmental Response, Compensation, and Liability Act, as amended, 42 USC §§ 9601 *et seq.:*

> "Among the factors considered in determining whether to apply the residual exception are ... the existence of sufficient corroborative evidence.").

In criminal cases where the confrontation opportunity was provided—*California v. Green, supra,* for example, where the witness was "markedly evasive and uncooperative on the stand"—the declarant's prior statement itself was not subjected to a separate confrontation analysis. 399 U.S. at 168–69, 90 S.Ct. at 1940–41. In *United States v. Owens, supra,* where the victim-witness could not remember seeing his assailant, yet the opportunity for confrontation was provided, the victim's prior identification of the defendant as his assailant was received without independent constitutional scrutiny. 484 U.S. at 564, 108 S.Ct. at 845.

This is not surprising, since the Supreme Court has often reminded us that the Confrontation Clause and the hearsay exceptions are not co-extensive:

> It seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots. But this Court has never equated the two, and we decline to do so now.

*Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970) (footnotes omitted).

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing

to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. . . .

*California v. Green,* 399 U.S. at 155, 90 S.Ct. at 1933.

Thus we do not apply the prohibition against bolstering "indicia of reliability" under Sixth Amendment—*Roberts* analysis to the "equivalent circumstantial guarantees of trustworthiness" requirement of residual hearsay under the rules of evidence. The Supreme Court has not yet definitively ruled on whether corroboration is one of the circumstances which may be used to assure the trustworthiness of hearsay under the rules of evidence, and the lower courts and the commentators have taken a variety of positions. *Compare* Imwinkelried, *The Scope of the Residual Hearsay Exceptions in the Federal Rules of Evidence,* 15 San Diego L.Rev. 239 (1978), and the cases cited therein, *with* Sonenshein, *The Residual Exceptions to the Federal Hearsay Rule: Two Exceptions in Search of a Rule,* 57 N.Y.U.L.Rev. 867 (1982), and the cases cited therein.[8]

We have previously sided with those courts holding that corroboration by other evidence is one of the means by which hearsay evidence can be tested for trustworthiness.[9] *United States v. Hines,* 23 MJ at 138[10];

---

8. Professor Imwinkelried and others have also commented on the mixed quality of some evidence that is routinely received under the traditional common-law hearsay exceptions:

As noted by Professor Davis, with whom other commentators have concurred, one of the most irrational features of hearsay law is that "technically incompetent hearsay is often more reliable than technically competent evidence." . . .

\*　　\*　　\*

Rather than ensuring extraordinary reliability, the traditional exceptions permit the admission of hearsay of frankly dubious reliability. In Professor McCormick's terse words, they sanction the admission of "[m]uch worthless evidence." In the case of some exceptions, the guarantee of trustworthiness seems "imagined" rather than real. On occasion, the common law seemed content with any guarantee other than the mere fact that the statement had been made.

Professor Morgan was one of the first to expose the suspect nature of some of the evidence routinely admitted under the traditional exceptions. For example, he pointed out that the continuity of state of mind theory overlooks probative memory dangers. Modern witness psychology has validated Morgan's criticism. This discipline has provided new insights which confirm the high probability of error in such frequently admitted types of hearsay as excited utterances.

The primary explanation for the relatively low quality and reliability of traditionally admitted hearsay is the common law's obsession with perjury. There are four distinct probative dangers—perception, memory, narration, and sincerity. Nevertheless, the common law courts, in framing the exceptions, focused primarily on sincerity. For most exceptions, there is no real substitute for a cross-examiner's ability to probe errors in perception, memory, or narration; realistically, there is only a substitute for the oath—some circumstantial inference that the declarant is not consciously lying. The hoary exceptions for dying declarations, declarations against interest, and excited utterances illustrate that the courts have placed the greatest emphasis on the testimonial quality of sincerity in evolving the traditional exceptions.

Imwinkelried, *The Scope of the Residual Hearsay Exceptions in the Federal Rules of Evidence,* 15 San Diego L.Rev. 239, 262–63 (1978) (footnotes omitted).

The instant case embodies a major improvement over "traditional hearsay exception" practice and, to a considerable extent, ameliorates the common-law concern about the sincerity of the declarant. Since the declarant was on the witness stand at the court-martial explaining her reasons for refusing to testify (revealing in the process significant details and ratifying, in effect, her prior statements), the factfinder—here the military judge—was presented with an eye and earful with which to evaluate her sincerity, motivations, and credibility. An opportunity to so observe the declarant-witness will often enhance greatly a factfinder's ability to weight prior statements. *Cf. California v. Green,* 399 U.S. 149, 159, 90 S.Ct. 1930, 1935–36, 26 L.Ed.2d 489 (1970).

9. Prior to *Wright,* virtually all of the United States Courts of Appeals had cited corroboration as a factor appropriate to reliability analysis. *See* Comment, *Idaho v. Wright:*

Is it a Step in the Wrong Direction in Determining the Reliability of Hearsay Statements for the Confrontation Clause?, 53 Ohio St.L.J. 663, 666–71 (1992) (discussing cases).

10. Regarding the Chief Judge's comment that, in *United States v. Hines,* 23 MJ 125, 134 (CMA 1986), we "constitutionalized Mil.R.Evid 804(b)(5)," 39 MJ at 171; that statement is taken completely out of context. *Hines* was decided

United States v. Yeauger, 27 MJ at 202; see also United States v. Jones, 30 MJ 127, 131 (CMA 1990) (Cox, J., concurring) ("Like all hearsay exceptions, this [Mil.R.Evid. 803(24) ] is a rule of reliability, truthfulness, trustworthiness, and accuracy."). Pending clarification to the contrary by the Supreme Court, we adhere to that view.

Under the circumstances of this case, see Appendix, we hold that the military judge did not abuse his discretion in considering corroborating evidence, including appellant's confession, in determining that the victim's pretrial statements satisfied the residual hearsay requirements of Mil.R.Evid. 804(b)(5).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

## APPENDIX

The ruling of the military judge on the defense objection to admission of the victim's pretrial statements (Pros.Ex. 4 and 5) was as follows:

The court rules that the victim's out of court statements, Prosecution Exhibits 4 and 5 for Identification, are admitted under M.R.E. [Mil.R.Evid.] 804(b)(5). In ar-

riving at this ruling, the court has determined that the statements by the victim were made by the victim, ... [A]; second, that the statements are offered as evidence of material facts in this case; that is, evidence of the sexual misconduct alleged in the charges and the specifications. The court has determined that the statements are more probative on the issues of whether any sexual misconduct occurred than any other evidence which the Government could reasonably procure through reasonable means. In fact, considering the refusal of the victim to testify in this case, the statements are the only form in which the victim's allegations can be presented to the court.

The court has also determined that the general purpose of the Military Rules of Evidence and the interests of justice will be served by admission of the victim's statements into evidence. Again, this case involves an intra-family alleged criminal offenses [sic] where really the only evidence in this particular case, substantial evidence, is from the family members themselves, one of which who [sic] has been deemed unavailable; this is, the victim.

almost 4 years before Idaho v. Wright, supra, and nothing in Hines could possibly be construed as addressing the question of what pieces of evidence might be used to ascertain reliability. The quoted portion of Hines clearly was focusing on how reliable evidence had to be in order to be admissible under the residual hearsay exception—and our answer was that it had to be every bit as reliable as did evidence receivable in lieu of confrontation under the Sixth Amendment. As to this requirement, we have certainly not backed off one iota.

If my Hines text, in retrospect of Wright, is at all ambiguous on that point, I would invite the reader to examine the substance of the cases I cited (23 MJ at 134). These cases were cited in support of our conclusion that reliability must be very high indeed to satisfy the residual hearsay exceptions. I.e., United States v. Nick, 604 F.2d 1199, 1203 (9th Cir.1979) ("The question in each case [confrontation/hearsay] must be whether a particular hearsay declaration, otherwise admissible, has such great probative value as evidence of a material fact and such a high degree of trustworthiness under all of the circumstances

that its reception outweighs any risk to a defendant that unreliable evidence may be received against him...."); United States v. West, 574 F.2d 1131, 1138 (4th Cir.1978) ("All of this [reciting the evidence corroborating the hearsay] lends a high degree of reliability and trustworthiness to Brown's testimony before the grand jury.... It should not be surprising that the same circumstances suffice to meet the requirements of § 804(b)(5) and of the Confrontation Clause.").

Certainly I was not purporting in Hines to prophesy subsequent rulings regarding the types of evidence that might be used to establish reliability, for either Sixth Amendment or hearsay purposes; I was also not asserting that the residual hearsay evidentiary rule must be welded to the Confrontation Clause for all purposes, procedural as well as substantive, for all time. As the instant case does not, in my judgment, involve a Sixth Amendment component, the unaffected portion of the Hines opinion is very much apposite to the instant facts. I regard this opinion as an application of the viable portions of Hines, not an overruling of them.

168

The court also finds that the statements of ... [A] have the following equivalent circumstantial guarantees of trustworthiness:

First, the victim had no apparent motive to lie; second, both statements are typed, easily readable, are coherent and, more importantly, are signed under oath by the victim. Next, the victim, in her brief appearance on the stand yesterday, acknowledged that she had been under oath, placed under oath in June of '89, and that she had never lied when under oath. Next, that the victim's motivations in revealing the alleged sexual misconduct against her on 9 June '89 is reflected in her 20 June '89 statement, wherein she states that for several days prior to 9 June '89 she feared that her father was going to have actual sexual intercourse with her and that she felt it was necessary to report his conduct to Mrs. Harris. Furthermore, ... [A] was afraid that her father might be doing something similar to her sister, and again, appears to be her motivations for revealing the alleged misconduct.

Next, the victim has not recanted her statements. On the stand yesterday, she expressed her desire simply not to be involved and declined in fact the opportunity to recant. The court really does not give much weight to her statement allegedly overheard yesterday by Sergeant McQuiston [ (the Area Defense Counsel Administrator; the statement overheard was made by the victim to civilian defense counsel just before the court-martial commenced) ] that her 20 June statement is five percent untrue. That statement really in itself is very unclear as to what she means. There is an indication she'd only read two lines of the statement and then made that particular statement and the court just does not place virtually any weight on that particular statement considering that [sic] the victim's now reluctance to participate in these proceedings or to hurt her father in any way.

The court also considers the details of the conduct of the interviews, which affirms the accuracy and the voluntary nature of the victim's statements. On the 9th of June, the victim, when she was being interviewed, was not overly emotional or confused or distraught, but was coherent. She readily told her story, once she was allowed to be just with women, to then Lieutenant Hall. Lieutenant Hall did not pressure the victim or put words in her mouth or coerce her in any way. Lieutenant Hall typed the statement using language obtained directly from the victim. The victim had the opportunity to change or correct her statement. Thus, the 9 June '89 statement is substantially the victim's own recitation, own words of the allegation.

On 20 June '89, again the victim initiated the interview with Special Agent Sallinger. The victim was coherent, under control. She again was not pressured or forced into giving the statement or a statement in any particular form. She was given the opportunity to change and correct her statement. Her words again were given directly to Special Agent Sallinger, who typed them up on the computer as she gave them to him.

The court also finds as circumstantial evidence of trustworthiness, that both statements are detailed. They're not inherently inconsistent or unbelievable, and they appear to be couched in language and terminology of that used by a young teenager.

The court also relies on the fact that some of the misconduct, some of apparently the touching and the feeling, occurred just several days before she reported it, and the other misconduct, again, within a reasonable period of time where she was likely to recall the details of that misconduct.

The court finds that the victim's refusal to testify also affirms the accuracy of her statements, since she recognized from the stand that if she testified and told the truth, that her father would go to jail. It certainly indicates to the court that her reflecting back on her statements that she realizes that there's something in that statement which is true, which is harmful to her father.

In response to the court's question about the charges themselves, she did answer that they were too heavy, or words to that effect, but she did not say that the allegations which led to those charges were untrue.

The court also relies on the fact that the accused confessed to much of the sexual misconduct in his 9 June '89 statement to the OSI, Prosecution Exhibit 2 for Identification; that is, he confessed to the fondling of his daughter's breasts and vaginal area, to having her fondle his penis, confessed to performing oral sodomy on her on a number of occasions, to rubbing his penis on her vagina. Again, his confession substantially supports her statements as to the times and places indicated by the victim and as to the activity which allegedly occurred.

In her 20 June '89 statement, the victim stated that the accused had made her watch dirty movies, one of which was entitled, "Between the Sheets." Numerous purported pornographic video tapes were seized from the accused's home, including one called "Between the Sheets."

Finally, in assessing the victim's character for truthfulness, the court has received differing opinions from several different witnesses—Sergeant Terrell, Captain Friesen, Sergeant Gardiner. However, I do not find the opinions as to her lack of trustworthiness so persuasive as to discount the victim's credibility as it relates to her 9 and 20 June statements.

SULLIVAN, Chief Judge (dissenting):

The granted issue in this case is:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY ADMITTING INTO EVIDENCE APPELLANT'S 9 JUNE 1989 STATEMENT AND THE 9 JUNE 1989 AND 20 JUNE 1989 STATEMENTS PURPORTEDLY GIVEN TO AGENTS OF THE AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS BY THE PUTATIVE VICTIM.

The out-of-court statements of A.M. clearly establish that appellant sexually abused her as charged and as he himself confessed prior to trial. However, this evidence was also essential corroboration for appellant's confession, and its exclusion might also render inadmissible appellant's confession. Mil. R.Evid. 304(g), Manual for Courts–Martial, United States, 1984. Appellant argues that the alleged victim's pretrial statements were admitted at his trial in violation of the Confrontation Clause of the Sixth Amendment and Mil.R.Evid. 804(b)(5).

I

Constitutional Question

The majority opinion first holds: "It is true, of course, that the victim was not subjected to 'full and effective cross-examination,' *California v. Green,* 399 U.S. at 159, 90 S.Ct. 1935–36." 39 MJ at 163. I agree. In *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the Supreme Court generally said:

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." This has long been read as securing *an adequate opportunity to cross-examine adverse witnesses. See, e.g., Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)....

484 U.S. at 557, 108 S.Ct. at 841 (emphasis added). Here A.M. appeared at trial but refused to answer any questions about the charged offenses or her prior statements about the charged offenses. Unlike the situation of the forgetful witness in *United States v. Owens, supra,* A.M. cannot be said to be "a hearsay declarant [who] is present at trial *and subject to unrestricted* cross-examination." *Id.* at 560, 108 S.Ct. at 843 (emphasis added).

Nevertheless, the majority opinion further concludes that appellant "waived cross-examination," 39 MJ at 163, and it is this conclusion with which I must respectfully disagree. *See generally Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461

(1938). For this holding, the opinion relies on the decision of *United States v. Thevis,* 665 F.2d 616 (5th Cir.), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). There, *clear and convincing evidence* was presented that the defendant murdered the very witness whose grand-jury statements the prosecution sought to introduce. The Fifth Circuit held

> that a defendant *who causes a witness to be unavailable* for trial for the purpose of preventing that witness from testifying also waives his right to confrontation under the *Zerbst* standard. A defendant who undertakes this conduct realizes that the witness is no longer available and cannot be cross-examined. Hence, in such a situation the defendant has intelligently and knowingly waived his confrontation rights.

665 F.2d at 630 (emphasis added). In *United States v. Hines,* 23 MJ 125, 133 (CMA 1986), this Court held that it would not find such a waiver in the "absen[ce of] a specific factual finding that ... [the witness] was being controlled by appellant." No such finding was reached by the judge in this case, and indeed no clear and convincing evidence was presented in this case that appellant caused the witness not to testify at this court-martial.

The majority opinion finally suggests that appellant made a tactical decision not to cross-examine A.M., and thus no Constitutional violation occurred. 39 MJ at 163. First, I note that it is clear from this record that defense counsel did not want the alleged victim to testify in this case or have her pretrial statements admitted. What defense counsel would? Nevertheless, it is not clear that defense counsel did not want to cross-examine this witness if her damaging pretrial statements were admitted. What defense counsel wouldn't? In any event, there is case law that holds that "[t]he right to confrontation is not" violated "if a defendant for tactical reasons chooses to forego cross-examination." *See United States v. Figueroa,* 976 F.2d 1446, 1457 (1st Cir.1992). However, in appellant's case, defense counsel declined to cross-examine A.M. before the military judge ruled that her pretrial statements were admissible and after she unequivocally stated

that she would answer no questions about her prior statements. I cannot find that the Sixth Amendment was satisfied under this theory.

My rejection of the majority approach to the Constitutional issue does not dictate that appellant was *per se* denied his right to confrontation in this case. I note, however, that appellant did assert at trial that admission of this hearsay evidence would violate his right to confrontation under the Sixth Amendment. *See generally United States v. Owens,* 484 U.S. at 558–61, 108 S.Ct. at 842–43. However, the military judge, in ruling on the trustworthiness question, did consider the independent corroboration of appellant's confession. That was Constitutional error under *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139 (1990).

## II

### Evidentiary Question

The majority opinion, finding no Constitutional violation, proceeds to decide that the military judge and Court of Military Review did not err in admitting this hearsay evidence under Mil.R.Evid. 804(b)(5). Although I need not reach that question, I again must respectfully disagree. Evidence corroborating the truth of matters asserted in the hearsay statements may not be considered in finding the "equivalent circumstantial guarantees of trustworthiness" required by this evidentiary rule.

My basis for this conclusion is the following language of Mil.R.Evid. 804(b)(5):

> (b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. A record of testimony given before courts-martial,

courts of inquiry, military commissions, other military tribunals, and before proceedings pursuant to or equivalent to those required by Article 32 is admissible under this subdivision if such a record is a verbatim record. This paragraph is subject to the limitations set forth in Articles 49 and 50.

(2) *Statement under belief of impending death.* In a prosecution for homicide or for any offense resulting in the death of the alleged victim, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be the declarant's impending death.

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(4) *Statement of personal or family history.* (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

(5) *Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if* the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant. (Emphasis added.)

Three reasons exist for my construction of Mil.R.Evid. 804(b)(5) as prohibiting consideration of independent corroborative evidence of the matter asserted in the hearsay statements. First, *Idaho v. Wright, supra,* holds that such corroborative evidence is not a matter relevant to the trustworthiness of a statement but rather to the lack of prejudice in its admission. 497 U.S. at 823, 110 S.Ct. at 3150–51; *see United States v. Ellis,* 935 F.2d 385–95 (1st Cir.1991). Second, the Supreme Court in *Idaho v. Wright, supra,* expressly defined "particularized guarantees of trustworthiness" in light of Fed.R.Evid. 804(b)(5) and concluded that only the "circumstances ... surround[ing] the making of the statement" could be considered. 497 U.S. at 820, 110 S.Ct. at 3149. *See United States v. Grooms,* 978 F.2d 425, 427 (8th Cir.1992); *United States v. Accetturo,* 966 F.2d 631, 636 (11th Cir.1992). Finally, this Court generally constitutionalized Mil. R.Evid. 804(b)(5) in *United States v. Hines,* 23 MJ at 134; therefore, the holding of *Idaho v. Wright, supra,* constitutionally prohibiting consideration of independent corroborative evidence logically should be applicable.

Despite all of the above, I would not set aside appellant's conviction. Even cursory review of the military judge's findings reveals that appellant's confession was one of many reasons that he found A.M.'s pretrial

statements were trustworthy within the meaning of Mil.R.Evid. 804(b)(5). I also note that this case was tried before the decision of the Supreme Court in *Idaho v. Wright, supra,* and in light of this Court's decisions prior to *Idaho v. Wright, supra,* which permitted consideration of independent corroborating evidence on the trustworthiness question. Therefore, I would remand this case to the trial court for reconsideration of this issue in light of *Idaho v. Wright, supra,* and *United States v. Greer,* 33 MJ 426 (CMA 1991).

WISS, Judge (dissenting):

I join fully in the dissenting opinion of the Chief Judge. Pursuant to his rationale, I agree that appellant did not waive his Sixth Amendment confrontation and cross-examination rights, so appellant's reliance upon those rights remains viable. The Government's responsibility in this context, then, was either to produce the witness (which assumes her availability) or to demonstrate her unavailability. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *relied upon* in *United States v. Clark,* 35 MJ 98, 104 (CMA 1992).

A number of interesting questions suggest themselves within the issue of whether the witness was available or unavailable, *see, e.g., United States v. Ortiz,* 35 MJ 391 (CMA 1992); *United States v. Clark, supra.* The determinative impact of the question of her availability, however, is rendered moot under these facts by my agreement with the Chief Judge that the showing of reliability that is necessary under the evidentiary hearsay rules is the same as will satisfy the Confrontation Clause when the witness is unavailable. *United States v. Hines,* 23 MJ 125 (CMA 1986); *see United States v. Clark,*

*supra* (where appellant waived confrontation rights, Court applied constitutional reliability standard in determining whether residual hearsay rule was met).

In addition to the rationale offered by the Chief Judge on the appropriate reading of Mil.R.Evid. 804(b)(5)—and, as well, Mil.R.Evid. 803(24), which is the residual-hearsay exception applicable when the declarant is available and is worded precisely the same as is Mil.R.Evid. 804(b)(5)—I suggest that a fair reading of the rules themselves ineluctably leads to the same conclusion. Each of these hearsay exceptions applies to an out-of-court "statement not specifically covered by any of the foregoing [specific] exceptions but having equivalent circumstantial guarantees of trustworthiness." It seems clear to me that the "equivalent" guarantees, thus, are those that are found within the "foregoing [specific] exceptions." Perusal of those exceptions—Mil.R.Evid. 803(1)-(23) and Mil.R.Evid. 804(b)(1)-(4)—reveals that, in every instance, the basis for reliability of the out-of-court statement is some circumstance that immediately and directly surrounds the making of the statement itself, not some collateral circumstance.

Finally, I agree with the Chief Judge that the appropriate disposition of this case, in light of our reasoning, is to remand for reconsideration. The military judge obviously relied to some extent upon the circumstances surrounding the making of the witness' out-of-court statement; it is equally obvious, though, that he relied to some extent upon impermissible collateral factors—one of which was a potentially powerful one, appellant's confession. Under these circumstances, it is appropriate to return this case to the trial level for a proper reliability analysis.