Chief Judge CRAWFORD
delivered the opinion of the Court.
Contrary to his pleas, appellant was convicted in June 1998 by officer and enlisted members of assaulting his 22-month-old daughter and 9-month-old son, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 USC § 928. The convening authority approved a sentence of a bad-conduct discharge, 6 months’ confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 52 MJ 795 (2000). We granted review of the following issues:
*61 I. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT APPELLANT WAIVED HIS SIXTH AMENDMENT RIGHT TO CONFRONT JULIA BRIDGES, THE PROSECUTION’S KEY WITNESS.
II. WHETHER APPELLANT’S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HIM WAS VIOLATED WHEN HIS WIFE’S STATEMENT TO LAW ENFORCEMENT INVESTIGATORS WAS ADMITTED UNDER MILITARY RULE OF EVIDENCE 804(b)(5).
Based upon United States v. McGrath, 39 MJ 158 (CMA 1994), we hold that the court below did not err, and there is no violation of appellant’s Sixth Amendment right to confront and cross-examine Mrs. Bridges.
FACTS
During the findings portion of the trial, Mrs. Bridges was called as a prosecution witness. She gave her name, her address, and length of residency at that address. However, when she was asked, “Do you remember going to your neighbor’s house ... your husband hit[ting] you that night ... slap[ping] you that night?” and other questions, she refused to answer. The judge then dismissed the court members and held a session under Article 39(a), UCMJ, 10 USC § 839(a).
At that session, Mrs. Bridges told the judge “it doesn’t matter” whether she’s ordered to testify or not, she will refuse to testify. The witness also stated that even if she were held in contempt, she would not respond to the judge’s questions. Near the end of this session, after Mrs. Bridges said she was not willing to answer “any of the questions that [the prosecutor] poses to [her],” the judge asked, “Anything anybody else wants to ask of this witness before I let her depart the courtroom?” The defense responded, “No, Your Honor.”
The judge then asked defense counsel, “Are they in the process or — being just separated or what?” The defense counsel responded, “[T]hey are still married and they intend to remain married.” The defense also responded she did not want “to testify [based on] the relationship with her husband.” Later, when arguing the admissibility of a prior statement made by Mrs. Bridges to law enforcement officers on December 8, 1997, the defense indicated they would challenge Mrs. Bridges’ competency. At that time, the judge gave the defense the opportunity to call her “back up here” as a witness, but the defense declined that invitation.
After this conversation, the judge determined that Mrs. Bridges was “unavailable” to testify and admitted her prior statement under the residual hearsay exception of Mil. R.Evid. 804(b)(5), Manual for Courts-Martial, United States (1998 ed.).[1] To support its admission, the judge found that the following factors supported the conclusion that the statement possessed guarantees of trustworthiness:
(1) Appellant’s statement corroborated Mrs. Bridges’ statement;
(2) The neighbors heard the children screaming;
(3) Mrs. Bridges “ran to a neighbor’s house and reported abuse by the accused;”
(4) She was “hysterical” at the time;
(5) Mrs. Bridges reported the abuse to the doctor; and
(6) Treatment was sought at the hospital for Mrs. Bridges’ two children.
After appellant’s conviction and during the sentencing stage, the defense sought to introduce a second statement made by Mrs. Bridges on June 15, 1998. Trial counsel responded:
Ma’am, for that one, we do have an objection. My concern is, of course, although we called her as a witness, she was unavailable, she won’t testify. She said she won’t testify. And if I called her back to cross-examine her about the contents of the letter or her bias or her motive, which *62 will go into the allegations again, she won’t testify.
Thereafter, the following discussion took place between defense counsel and the military judge:
DC: Your Honor, I believe that Captain Spath [the prosecutor] would have a valid point if she went in and discussed the events. However, she states very clearly that she’s talking about the impact that this will have upon her family. This is clearly matters in mitigation. While Captain Spath may be unhappy that he can’t cross-examine her about areas that are not included in this statement, under the relaxed rules of sentencing, I don’t think that’s a valid reason to keep this out.
She does not go into the areas that he’s mentioned that he wants to cross-examine her about.
MJ: Well, but that’s the point. He’s saying the statement’s one-sided. She’s talking about all the stuff with the child and the impact, and yet, he can’t go into what was the impact at the time or what — you know, what was going on with the children.
$ ^ $
MJ: Well, she needs to rethink — and I understand that she didn’t, but, you know, Captain Spath has the opportunity to call her back and she needs to be prepared and come — and he has the opportunity to present rebuttal and to cross-examine her about this____ Mrs. Bridges needs to make a decision[.]
* * #
DC: Well, ma’am, you know, there’s an easy way to resolve this. She’s here in this courtroom, she’s heard all this discussion, we can call her to the stand right now and we can ask her what she would do and you could instruct her that if she is going to be willing to answer questions, that she can’t stop in the middle, as Captain Spath just suggested.
MJ: Well, I can’t stop her from not stopping in the middle [sic]. I just won’t let you give them the exhibit [Mrs. Bridges’ statement made June 15, 1998] until she’s answered questions. It’s that simple. Because — are you going to call or Spath going to call her to answer questions? You’re not planning on calling her, right?
DC: I was not planning on calling her.
DISCUSSION
The Sixth Amendment provides in part that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him,” together with “the right ... to have compulsory process for obtaining witnesses in his favor____” Article 39(a)(4) provides for the “presence of the accused,” and Article 46, UCMJ, 10 USC § 846, states that “the defense counsel ... shall have equal opportunity to obtain witnesses and other evidence ____”
If the right of confrontation and cross-examination means anything, it means that the prosecution must present the hearsay declarant at trial in an attempt to elicit the out-of-court statement directly from the witness’s lips while on the witness stand and under oath. That was done in this case.
The genesis for the current Sixth Amendment interpretation is found in Justice Harlan’s concurring opinion in California v. Green, 399 U.S. 149, 172, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).[2] With Green as a road-map, in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court declared “a preference for face-to-face confrontation at trial.” Id. at 63, 100 S.Ct. 2531 (emphasis added). The Court held that hearsay is admissible when the witness is unavailable and -the hearsay either “falls within a firmly rooted hearsay excep *63 tion,” see, e.g., White v. Illinois, 502 U.S. 346, 355, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), or has “particularized guarantees of trustworthiness," see, e.g., Idaho v. Wright, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). 448 U.S. at 66, 100 S.Ct. 2531. “[T]he Sixth Amendment establishes a rule of necessity. In the usual ease (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.” Id. at 65, 100 S.Ct. 2531.
The Supreme Court has used a “cost benefit” analysis when balancing witness unavailability with the “ ‘Confrontation Clause’s very mission’ which is to ‘advance “the accuracy of the truth-determining process in criminal trials.” ’ ” United States v. Inadi, 475 U.S. 387, 396, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), quoting Tennessee v. Street, 471 U.S. 409, 415, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985), quoting Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). See also United States v. Johnston, 41 MJ 13 (CMA 1994)(purpose of a trial is truth-finding within constitutional, statutory, and ethical constraints).
The unavailability requirement is inapplicable in some situations, for example, where the utility of confrontation is “remote,” Roberts, 448 U.S. at 65 n. 7, 100 S.Ct. 2531, or the exception is “firmly rooted,” as in statements of co-conspirators, Inadi supra; declarations against interest, United States v. Jacobs, 44 MJ 301 (1996)[3]; dying declarations; business records; and public records, 448 U.S. at 66 n. 8, 100 S.Ct. 2531. Conversely, the residual hearsay exception is not firmly rooted — thus, the requirement to establish unavailability and particularized guarantees of trustworthiness. Idaho v. Wright, supra.
A witness is unavailable when she “persists in refusing to testify concerning the subject matter of [her] statement despite an order of the military judge to do so____” Mil.R.Evid. 804(a). In this case, appellant’s wife was called to the witness stand and stated her name, address, and how long she had been living at that address. Then she told the judge that she would not testify, even if ordered to do so. Only after her refusal to testify further and defense counsel’s declination of the opportunity to cross-examine her was the prosecution allowed to introduce her statement given to law enforcement officials on December 8, 1997. The prosecution was not responsible for the unavailability resulting from the refusal of the witness to testify. See, e.g., Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). Mrs. Bridges was, in effect, invoking her “marital privilege.”
This case is strikingly similar to United States v. McGrath, supra, and United States v. Martindale, 40 MJ 348 (CMA 1994). In both of these cases, we held that when a witness is present and confrontation is not at issue, the judge may employ extrinsic circumstances to corroborate the witness’s prior statement the proponent seeks to admit.
In McGrath, the accused’s 14-year-old daughter, A, was called by the prosecution as a witness. When asked if she had made statements implicating appellant, A refused to answer. Additionally, she refused to retract or confirm her prior statements. A admitted that she appeared in court because she received a German subpoena. A said she did not want to testify because she wanted to avoid any potential harm to her father. Just as in the case sub judice, when the military judge concluded his questioning of A’s daughter, he offered defense counsel an opportunity to question the witness, and defense counsel declined. 39 MJ at 159-61. Likewise, in Martindale, there was a voluntary confession, and the witness-declarant was tendered to the defense, but they expressly waived the right to confront the witness at trial. 40 MJ at 349.
Just like the witness in McGrath, Mrs. Bridges was present, was placed under oath, and gave identifying information but refused *64 to respond to additional questions. When defense counsel was asked whether they had any questions for Mrs. Bridges, they replied in the negative. Additionally, defense counsel informed the judge that Mrs. Bridges would not testify because she intended to remain married to appellant and her refusal to testify was motivated by this relationship. The defense said that they had talked with Mrs. Bridges and knew her desires.
During sentencing, the defense noted that she was willing to testify in mitigation about the “impact” the findings would have upon her family. The judge told defense counsel that Mrs. Bridges “needs to make a decision” about whether she will be subject to cross-examination. The defense said that decision will be easy because “[sjhe’s here in this courtroom, she’s heard all this discussion.” The defense then stated that they were not planning to call her as a witness. They only, wanted to introduce her written statement. However, the judge ruled that unless Mrs. Bridges would be willing to be called and be subject to cross-examination, she would not admit the written statement. Ultimately, the statement was not admitted.
Just as in McGrath, “it is clear that examination of the victim, direct or cross, was the very last thing on earth the defense wanted to have happen. Having thus eschewed confrontation, appellant cannot now claim a denial of it.” 39 MJ at 163. We agree with the Court below:
Had the defense made a sincere effort to examine the witness and she still refused to testify, the issue would be different. However, when a witness is produced at trial and the defense makes no effort at all to avail of the opportunity thereby provided to test the recollection and conscience of the witness, it is clear that the defense waives cross-examination. And, that waiver of cross-examination satisfies the [unavailability] requirements of the Confrontation Clause.
52 MJ at 800.
As in McGrath, “the Government did not seek to rely on paper evidence, but rather produced the witness.” Id. at 163. Thus, we hold that it was appropriate for the judge to consider factors outside the making of the statement to establish the reliability of Mrs. Bridges’ December 8, 1997, statement to law enforcement officials and to admit her statement during the prosecution’s case-in-chief.
This is not the case of a witness who was absent. In fact, Mrs. Bridges was present and on the witness stand during the case-in-chief, and present in the courtroom during sentencing. Nor is this a case where the defense made any attempt to impeach the pretrial statement of Mrs. Bridges. This is a case of a witness trying to protect her interests, and by so doing, allowing appellant now to use the lack of cross-examination as a sword. This is a witness who was made available, but for reasons known to her, defense counsel, and possibly appellant, was unwilling to testify. In summary, it is enough that appellant and defense counsel were brought face-to-face with the witness and given an opportunity to ask the judge to order her to testify, encourage her to testify, cross-examine her, or offer evidence to discredit the pretrial statement. The defense took none of these actions.
DECISION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. Now Mil.R.Evid. 807.

. In United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the majority of the Court expressly adopted Justice Harlan's concurring opinion in Green.

. We need not decide if Mrs. Bridges’ statement was a declaration against interest and, thus, a firmly rooted exception to the hearsay statement.