UNITED STATES, Appellee

v.

Scott A. GRANT, Sergeant, U.S.
Air Force, Appellant.

No. 94–0334.
CMR No. 30119.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 14, 1995.

Decided Sept. 13, 1995.

For Appellant: *Captain Marge A. Overly* (argued); *Colonel Jay L. Cohen* (on brief); *Captain Robert I. Smith.*

For Appellee: *Major Barnard N. Madsen* (argued); *Colonel Jeffery T. Infelise* (on brief); *Colonel Thomas E. Schlegel.*

*Opinion of the Court*

GIERKE, Judge:

1. A military judge sitting as a general court-martial convicted appellant, on mixed pleas, of rape, committing indecent acts (2 specifications), and attempted sodomy of a child, in violation of Articles 120, 134, and 80, Uniform Code of Military Justice, 10 USC §§ 920, 934, and 880, respectively. The approved sentence provides for a dishonorable discharge, confinement for 18 years, and reduction to the grade of Airman. The Court of Military Review* affirmed the findings and the approved sentence. 38 MJ 684, 695 (1993).

2. We granted review of the following issue:

> WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED, WHEN, CONTRARY TO THE CONCLUSIONS OF THE MILITARY JUDGE, IT FOUND THE VICTIM'S PROMPTED STATEMENT REGARDING WHEN CERTAIN OFFENSES OCCURRED WAS ADMISSIBLE AS RESIDUAL HEARSAY.

*See* 41 MJ 213, 229 n. * (1994).

*Factual Background*

3.  Appellant was accused of various sexual offenses with his 7–year–old stepdaughter between February 1991 and January 1992. The statement, made by the victim to an adult family friend, pertained to one incident on December 23, 1991 (specification 2 of Charge II). Trial counsel offered the statement both as an excited utterance under Mil.R.Evid. 803(2), Manual for Courts–Martial, United States, 1984, and as residual hearsay under Mil.R.Evid. 803(24). As required by the latter rule, he provided notice of intent to offer residual hearsay. The military judge admitted the statement as an excited utterance, but rejected it as residual hearsay (R. 499). The Court of Military Review held that the military judge erred by characterizing the statement as an excited utterance. 38 MJ at 692. The court held, however, that the military judge did not abuse his discretion in admitting the evidence because the statement qualified as residual hearsay. *Id.* at 692–94. We hold that the Court of Military Review did not err.

4.  The victim, H, was 8 years old at time of trial. Concerning an incident unrelated to the granted issue, she testified that appellant "took his pants off and mine and rubbed his thing on my behind." When asked if appellant "put his thing in your behind," she answered, "Yes." She testified that it felt "bad" and it "hurt." She testified that she told her mother about the incident, after which appellant and his wife argued.

5.  Appellant's wife testified that appellant's commander ordered him to move into the barracks in early October 1991. In late November 1991, appellant moved back into the family home. The incident at issue allegedly occurred on or about December 23, 1991. Concerning that incident, the stepdaughter was unresponsive to trial counsel's questioning, except to say that it was "bad times" when her stepfather visited her.

6.  Because the stepdaughter either could not or would not testify about the December incident, the prosecution called Mrs. P to testify about her conversation with H on Christmas Day 1991. H had testified that she did not "remember going" to someone's house "for Christmas dinner." When asked specifically by the military judge whether she remember[ed] going to [Mrs. P's] house on Christmas Day" or seeing Mrs. P, she had responded, "I don't know." Defense counsel waived cross-examination of H.

7.  The foundation for Mrs. P's testimony was established by a stipulation of expected testimony. It was stipulated that she would testify as follows concerning December 25, 1991:

> When Scott [appellant] and the girls arrived, I gave the girls something to eat and then told them they could go play outside. At this time, [H] seemed happy and was telling me about all the Christmas presents that she had received. Once the girls were outside, I went upstairs to my bedroom to feed my newborn baby. While feeding my child, [H] came up to my room and she laid down on the bed beside me. At this time, [H] looked very sad and teary-eyed. Before saying anything to her, [H] asked if I knew what happened to her and her dad . . . .

8.  The military judge ruled that H's statement to Mrs. P was admissible as an excited utterance. In deciding whether to admit H's statement as an excited utterance or as residual hearsay, the military judge made findings of fact, including the following:

(1) When H arrived at Mrs. P's house with her sister and appellant, she "appeared happy and was telling her about all of the Christmas presents she had received";

(2) H sought out Mrs. P "after having been told to play outside";

(3) H lay down on the bed beside Mrs. P, "looking very sad and teary-eyed";

(4) H's "statement was spontaneous, and her more detailed explanation was in response to a leading question, but one which implied no wrongdoing";

(5) H's "statement was detailed as to its sexual content";

(6) The statement "involves an event which allegedly occurred somewhere between 36 and 48 hours earlier";

9. The military judge concluded his recital by stating:

> I am convinced by the facts and circumstances of this case that the girl's unsolicited, spontaneous statements to Mrs. [P] are the first available opportunity and were indeed excited utterances. . . .

The alleged victim was 7–years old at the time. The opportunity to talk to her mother alone was minimal to non-existent. Her mother, who had promised to protect her, let the accused move back into the home, potentially violating her promise in the mind of [H]. Her baby-sitter, Tina, was new and unknown. Mrs. [P] was the first adult who she had a real opportunity to talk to about the alleged offense.

10. Although the military judge limited his consideration of "indicia of reliability", ¶ 14, to the circumstances under which H made her statements to Mrs. P, the parties had earlier stipulated to the expected testimony of H's 5–year–old sister. They agreed that the younger sister would testify to the following:

> Sometime close to Christmas, my sister and I were sleeping in our room. Daddy came into our room and got into bed with me and my sister, [H]. Daddy told me to cover my eyes. . . . My sister told me that daddy did bad things to her.

11. After the military judge ruled that Mrs. P would be permitted to testify about her conversation with H, Mrs. P testified as follows:

> Q. Okay, how did she start talking to you? I mean, could you tell the judge exactly what happened?
>
> A. Okay, she asked me a question and she said, do you know what me and my daddy have—do you know me and my daddy having some kind of—like a—do you know what my daddy doing to me, auntie? That's what she said. And then I said, no.
>
> She said, do you know my daddy kissing me? I said, well, all the parents kissing their kids. And I said, see I kiss LeAnn, 'cause I got my baby. And then she said, no, not like that. And then I hold her hand and said (kissing wrist) this is the way your daddy kiss you, like that, like this right?
>
> TC: Let the record reflect that the witness kissed her wrist.
>
> WIT: Yeah, I kiss her wrist like this (kissing wrist), so. And then she said, no, not that way she—that's not the way he kissed me. She said—I said—and then I become wondering, you know, tell me more what's going on, right. And then she said, my daddy be kissing on me and she said, taking off my underwear and stuff like that. And she be telling me stuff now and then. I say, okay, that's enough and then I stop her.
>
> Then I questioned her again. I said, when the last time you and your daddy did that to you, the other day or last year or—because Grant [appellant] left the house. So he stay in the dorm. And then I ask her, and now your dad back at the house, did he do you like that again? She say, yeah. When the last time she did, yesterday, two days ago or last night or today, this morning? She said, two days ago. She doesn't know when.
>
> Q. Now, when she was telling you what happened, what specifically did she say happened.
>
> A. Is—
>
> Q. After she said he would kiss her and take her panties off, what did she say?
>
> A. And then she told me that, I say—and then she stop for awhile and then I asked her some more, I said, do you—do you—did your daddy do [R, the other daughter] like that too? She said, No. But [R] be there in the bed with you? She said, yeah, sometimes she's in the bed with me and my daddy go inside the cover.
>
> And then I tell her, do your daddy have, you know, like lay on the top of you and stuff like—because I have—I become curiosity on what she's trying to tell me, trying to find out what's going on. So, and then she told me that she always turn her back, you know, and then she—
>
> Q. Did she say what he would touch her with?
>
> A. He touch her all over her body, stuff like that, and they lay on their back and

stuff like that, rubbing her body—rubbing Scott body on the back on [H], stuff like that.

Q. Did [H] tell you what part of the body that Scott would use?

A. Yes, she said in the bottom. That's what she told me.

Q. Okay, but—well, did she tell you what part of the body Scott would use? What part of his body he would use when he rubbed her?

A. Yeah, I asked her about that too. I said, do your daddy touch you like this on the back of your—on you bottom and she said, yep. And then say one time he try to hurt me and he hurt so bad and I shout and then my mama wake up. It stuff like that. She mix it up, all of the deal. It's happened, already past, and now, stuff like that.

## Discussion

12. Mil.R.Evid. 803(2) permits evidence of an excited utterance, defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The military judge admitted H's statement under this provision. The Court of Military Review recognized that, "as the age of the declarant decreases, the more elastic the elapsed time factor, within reason." 38 MJ at 691, *citing United States v. Iron Shell,* 633 F.2d 77, 86 (8th Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). *See also* 2 *McCormick on Evidence* § 272.1 at 224 (4th ed. 1992); *People v. Trimble,* 5 Cal.App.4th 1225, 1234, 1235, 7 Cal.Rptr.2d 450, 455, 456 (1992) (2–day delay; child sequestered at home, but began "frantic description" of incident at first opportunity out of defendant's presence); *State v. Taylor,* 66 Ohio St.3d 295, 612 N.E.2d 316, 323 (1993) ("children are likely to remain in a state of nervous excitement longer"). Nevertheless, the Court of Military Review held that H's statement did not qualify under Mil.R.Evid. 803(2) because H's statement "was not made while under the stress or excitement of the event, but the product of sad reflection." 38 MJ at 692.

The court decided, however, that the military judge did not abuse his discretion by admitting the evidence, because the statement qualified as residual hearsay under Mil. R.Evid. 803(24). 38 MJ at 693–94.

■ 13. Mil.R.Evid. 803(2) and 803(24) are mutually exclusive. By its terms, Mil. R.Evid. 803(24) only applies to "statement[s] not specifically covered by any of the foregoing exceptions." They are not, however, mutually inconsistent. Evidence which fails to meet a particular requirement of the enumerated exceptions may qualify as residual hearsay under Mil.R.Evid. 803(24).

14. A declarant's mental state which falls short of the "stress of excitement" requirement of an excited utterance may nevertheless qualify for admission as residual hearsay. *See Idaho v. Wright,* 497 U.S. 805, 815, 821, 110 S.Ct. 3139, 3146, 3149–50, 111 L.Ed.2d 638 (1990) ("indicia of reliability" include "spontaneity" and "mental state of the declarant"); *United States v. Pollard,* 38 MJ 41, 50 (CMA 1993) (declarant was engaged in "hard crying" while responding); *United States v. Lyons,* 36 MJ 183, 187 (CMA 1992) (declarant was still "under the stress of excitement" and "emotionally and excitedly volunteering information" when questioned); *United States v. Clark,* 35 MJ 98, 106 (CMA 1992) (declarant "was still suffering under the trauma of the event when she made her statements"); *United States v. Jones,* 30 MJ 127, 131 (CMA 1990) (Cox, J., concurring) ("unsolicited, spontaneous, emotional" statement had "equivalent circumstantial guarantees of trustworthiness").

■ 15. We hold that the court below did not err by sustaining the military judge's admission of H's statement. The materiality, probative value, and necessity of H's statement to Mrs. P are not in issue. *See United States v. Pollard,* 38 MJ at 49. The only issue is trustworthiness. H's mental state, even if not qualifying as "stress of excitement" under Mil.R.Evid. 803(2), strongly suggested trustworthiness. Other circumstances of her statement also indicated trustworthiness. She spontaneously initiated the conversation. *See Idaho v. Wright,* 497 U.S. at 821, 110 S.Ct. at 3149–50. Mrs. P's subse-

quent questioning was not suggestive. *See United States v. Pollard*, 38 MJ at 50 and *United States v. Clark*, 35 MJ at 106 (non-leading questions). Finally, H's statements were corroborated by her sister's testimony. *See United States v. McGrath*, 39 MJ 158, 166–67 (CMA) (corroboration may be considered in determining trustworthiness after confrontation is satisfied or waived), *cert. denied*, —— U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994). *See also United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) (confrontation satisfied when victim testified that he could not remember having seen assailant).

### Decision

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and CRAWFORD concur.

WISS, Judge (concurring with exception):

16. I concur in the majority opinion except insofar as, near the end, ¶ 15, the majority relies in part upon corroborating statements of H's sister to conclude that H's statements to Mrs. P were trustworthy within the meaning of Mil.R.Evid. 803(24), Manual for Courts–Martial, United States, 1984. As I have stated previously, I believe that the "equivalent circumstantial guarantees of trustworthiness" that are necessary for admissibility under either Mil.R.Evid. 803(24) or 804(5) are limited to any "circumstance that immediately and directly surrounds the making of the statement itself, not some collateral circumstance." *United States v. McGrath*, 39 MJ 158, 172 (CMA) (Wiss, J., dissenting), *cert. denied*, —— U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *accord United States v. Morgan*, 40 MJ 405, 413 (CMA 1994) (Wiss, J., dissenting).

17. Even as so restricted, however, I am satisfied that there are adequate "circumstantial guarantees of trustworthiness" here. As was the case of the victim's statements in *United States v. Clark*, 35 MJ 98 (CMA 1992), H's statements to Mrs. P "were voluntary, uncontrived, unconstrained, and spontaneous in that none of the essential details of these statements were suggested to [H] by

others;" "[n]o motive was suggested for [H] to lie;" and H "had first hand knowledge of all the events to which her out-of-court statements pertained." *Id.* at 106. Specifically, the military judge found as fact that

(B) [H] came inside on her own accord, after having been told to play outside, and sought out Mrs. [P] in her bedroom.

(C) [H] laid down on the bed beside her looking very sad and teary-eyed.

(D) Before Mrs. [P] could say anything to her, [H] asked if Mrs. [P] knew what happened to her and her dad.

\*    \*    \*

(J) [H]'s statement was spontaneous, and her more detailed explanation was in response to a leading question, but one which implied no wrongdoing.

([K]) The statement was detailed as to its sexual content.

Further, as the majority reasons, H's statements may not qualify as excited utterances, but her "sad and teary-eyed" demeanor when initiating the conversation with Mrs. P argues in favor of the trustworthiness of her statements, as does the obvious lack of any offensive, substantive "leading" of H by Mrs. P in the conversation. ¶ 15.

Accordingly, with the exception noted at the outset, ¶ 16, I agree with the majority opinion.

SULLIVAN, Chief Judge (concurring in the result):

18. I would uphold the judge's decision in this case to admit the challenged statement on the basis of Mil.R.Evid. 803(2), Manual for Courts–Martial, United States, 1984. I am satisfied that he did not abuse his discretion in admitting the child's statement to a neighbor, Mrs. P., as an excited utterance under the particular circumstances of this case. *See United States v. Arnold*, 25 MJ 129 (CMA 1987) (opinion of Cox, J.), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988). Here, there was:

(1) a 7–year–old victim;

(2) the offense occurred around Christmas time and receiving of gifts;

(3) this was the first real opportunity for victim to report offense to an adult;

(4) the alleged statement occurred 36–48 hours after the offense;

(5) the victim's mother was in a compromised position in the child's eyes at the time of this statement.

Accordingly, I need not decide whether the challenged evidence was admissible under Mil.R.Evid. 803(24).