### UNITED STATES

v.

**Darrell J. MUIRHEAD, 507–76–6502, Machinery Repairman Second Class (E–5), U.S. Navy.**

**NMCM 96 01211.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 13 Jan. 1996.

Decided 27 Feb. 1998.

---

LT Syed N. Ahmad, JAGC, USNR, Appellate Defense Counsel.

LT Randy S. Kravis, JAGC, USNR, Appellate Government Counsel.

Before GRANT, Chief Judge, and SEFTON and OLIVER, Appellate Military Judges.

OLIVER, Judge:

Officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of assaulting his 6–year–old stepdaughter with intent to inflict grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1994)[hereinafter UCMJ]. His sentence included confinement for 2 years, forfeiture of all pay and allowances,[1] reduction to the lowest enlisted pay grade, and a bad-conduct discharge. On 29 May 1996 the convening authority approved the sentence as adjudged.

We have reviewed the record of trial, the appellant's nine assignments of error,[2] and the Government's response thereto. After careful consideration we conclude that the

findings and sentence, except as we have modified it below, are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant was committed. We will consider each of the assignments of error in order. Although not raised as an assignment of error, we will also discuss one additional issue at the end of the opinion.

## Admission of Hearsay Statements as Substantive Evidence

In his first assignment of error, the appellant has contended, both at trial and on appeal, that the military judge should have excluded certain hearsay statements that M.D., the 6 year-old child victim in this case, made to others involved in providing shelter and protection to her.[3] After careful review

---

1. The actual language was: "to forfeit all pay and allowances, which is $854.40 per month for 2 years...." Record at 652. We resolve this discrepancy, in the appellant's favor, in response to an assignment of error below.

2. I. THE MILITARY JUDGE ERRED WHEN HE ADMITTED HEARSAY AS SUBSTANTIVE EVIDENCE.
II. THE MILITARY JUDGE ERRED WHEN HE DENIED APPELLANT'S MOTION TO SUPPRESS STATEMENTS TAKEN IN VIOLATION OF ARTICLE 31, UNIFORM CODE OF MILITARY JUSTICE.
III. THE EVIDENCE IS FACTUALLY AND LEGALLY INSUFFICIENT TO PROVE APPELLANT COMMITTED THE ASSAULT BECAUSE DR. DULLY TESTIFIED THAT THE INJURY WAS VERY POSSIBLY THE RESULT OF AN ACCIDENT, BECAUSE THE TOY MOP ONLY HAD TO ENTER FIVE TO TEN MILLIMETERS INTO THE VAGINA (WHICH IS CONSISTENT WITH AN ACCIDENT), AND BECAUSE [M.D.'S] ACCUSATORY STATEMENTS WERE MADE IN A TWO–DAY PERIOD IN THE MIDST OF A YEAR–LONG PERIOD DURING WHICH SHE DENIED APPELLANT COMMITTED ANY IMPROPER ACTS. (References and citation omitted.)
IV. THE STAFF JUDGE ADVOCATE ERRED WHEN SHE FAILED TO ADDRESS THE MERITS OF APPELLANT'S ASSERTION THAT THE PREVIOUS TEMPORARY STAFF JUDGE ADVOCATE, CDR LYNCH, WAS DISQUALIFIED FROM PARTICIPATION IN THIS CASE. (References and citation omitted.)
V. THE CONVENING AUTHORITY ERRED IN APPROVING THE FORFEITURES OF ALLOWANCES BECAUSE THE SENTENCE WAS AMBIGUOUS. (Reference and citation omitted.)
VI. THE MILITARY JUDGE ERRED WHEN HE PERMITTED, OVER DEFENSE OBJECTION, AGENT BRADY TO TESTIFY THAT AP-

PELLANT SHOULD HAVE BEEN ABLE TO HEAR [M.D.] SCREAM WHEN SHE WAS INJURED. AGENT BRADY COULD NEITHER TESTIFY AS A LAY WITNESS (SHE HAD NOT BEEN PRESENT AT THE HOME AT THE TIME OF THE INCIDENT) NOR TESTIFY AS AN EXPERT (SHE WAS NOT QUALIFIED AS ONE). (Reference and citations omitted.)
VII. THIS COURT IS WITHOUT JURISDICTION TO REVIEW THIS CASE BECAUSE ITS JUDGES, WHEN ACTING IN THEIR JUDICIAL CAPACITY, ARE PRINCIPAL OFFICERS, WHO HAVE NOT BEEN APPOINTED TO THEIR POSITIONS IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)
VIII. APPELLANT'S COURT–MARTIAL LACKS JURISDICTION BECAUSE THE MILITARY TRIAL JUDGE, ACTING IN HIS JUDICIAL CAPACITY, WAS A PRINCIPAL OFFICER, WHO HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)
IX. APPELLANT'S COURT–MARTIAL LACKS JURISDICTION BECAUSE THE CONVENING AUTHORITY, IN HIS CAPACITY AS A CONVENING AUTHORITY, WAS A PRINCIPAL OFFICER, WHO HAD NOT BEEN APPOINTED IN ACCORDANCE WITH THE APPOINTMENTS CLAUSE. (Citations omitted.)

3. The three statements are: (1) on 14 November 1994 M.D. stated to Ms. Riddle that "her Dad didn't mean to stick the broom in her puki and her pic-pic and that she wanted to go home to her Mommy."; (2) later that day when M.D. told Ms. Merfalen, while in the hospital, that "My Daddy hurt me ...."; and (3) the next day, in response to some questions from Ms. Merfalen, that her stepfather had shoved a toy broom into her vagina. After discussing the relevant legal principles, we will consider each of these statements separately.

of the record of trial and consideration of the applicable legal principles, we disagree.

■ All relevant evidence is admissible in trials by court-martial, unless barred by another rule of law. MIL.R.EVID. 402, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MIL.R.EVID. 801(c). As a general rule, hearsay, although relevant, is not admissible in criminal proceedings over a timely objection. MIL.R.EVID. 802. This is because of concerns with convicting (or acquitting) someone based on statements, originally made outside the presence of the trier-of-fact, of declarants who were not subject to cross-examination. However, the rule does not provide an absolute bar. Where there are sufficient circumstantial guarantees that the extrajudicial statement is trustworthy, the Military Rules of Evidence provide exceptions to permit relevant, helpful, and credible information to come before the trier-of-fact as substantive evidence.

■ Military appellate courts are to review a trial judge's ruling admitting or excluding evidence for an abuse of discretion. *United States v. Sullivan,* 42 M.J. 360, 363 (1995); *see United States v. LeMere,* 22 M.J. 61, 67 (C.M.A.1986). After hearing evidence on a motion *in limine* to bar these statements from coming into evidence, the military judge entered extensive essential findings of fact and conclusions of law. Because the appellant's case comes to us for review under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we are not bound by the military judge's essential findings. *United States v. Spychala,* 40 M.J. 647, 650 (N.M.C.M.R.1994) (citations omitted). "Nonetheless, we are generally inclined to give them deference." *United States v. Jones,* 34 M.J. 899, 905 (N.M.C.M.R.1992) (citations omitted).

In this case the military judge concluded that, despite the 8 days of elapsed time, M.D. was still "excited by the stress from that event" and made the statement "spontaneously" based on the incident which gave rise to this court-martial. Record at 354. He ruled that the initial statement to Ms. Riddle was admissible, whether or not the child was available to testify, "under a firmly rooted exception to the hearsay rule and is admissible whether or not the declarant is available...." *Id.* at 357; *see* MIL.R.EVID. 803(2). He also ruled that the other statements M.D. made to Ms. Merfalen would be admissible only if the child was unable to testify. Record at 355–57; *see* MIL.R.EVID. 804(b)(5). With these legal principles in mind, we will review both rulings.

### M.D.'s Statement to Ms. Riddle

The appellant first objected to the admissibility of M.D.'s statement to Ms. Riddle on 14 November 1994. Ms. Riddle was the director of the small child-care facility which was responsible for providing M.D. with shelter, food, and emotional support. Because Ms. Riddle determined that M.D. had begun to bleed extensively from the site of the injury she had suffered 8 days earlier, she prepared to return her to the hospital for follow-up care. However, M.D. believed that she was going home to be reunited with her family. She became very upset ("hysterical") when she learned that she was going to the hospital and that she would not be returned to her home until it was safe. M.D. then spontaneously exclaimed: "Daddy didn't mean to stick a broom in my puki or my pikpik, I want to see my Mommy." Record at 165; *see id.* at 398; Prosecution Exhibit 20. Ms. Riddle did not pose any questions to elicit the statement. Indeed, she testified that up until that point she had been completely unaware of how the injury had occurred.

■ Military Rule of Evidence 803(2) provides an exception to the hearsay rule for those statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The theory supporting the admissibility of excited utterances is that someone who makes such an exclamation under the stress of the event lacks the opportunity to reflect and fabricate an untruthful version. *United States v. Jones,* 30 M.J. 127, 129 (C.M.A.1990). The statement must be "spontaneous, excited or impulsive

rather than the product of reflection and deliberation." *United States v. Iron Shell,* 633 F.2d 77, 86 (8th Cir.1980).

There is no "bright line rule" in determining whether a statement qualifies as an excited utterance. *United States v. Arnold,* 25 M.J. 129, 132 (C.M.A.1987). The statement need not be made at the same time as the startling event to be admissible as an excited utterance. However, to be admissible, an excited utterance must be made while under the excitement of the offense being prosecuted. *See United States v. Grant,* 42 M.J. 340, 343 (1995). Although the lapse of time is a relevant factor in the reported cases we have reviewed, it is not the only factor. In fact, "the lapse of any particular period of time . . . is not the focus of the rule." *United States v. Miller,* 32 M.J. 843, 851 (N.M.C.M.R.1991), *aff'd,* 36 M.J. 124 (C.M.A.1992). This is particularly true with young children, who tend to "remain in a state of nervous excitement longer." *Grant,* 42 M.J. at 343 (quoting *State v. Taylor,* 66 Ohio St.3d 295, 612 N.E.2d 316, 323 (1993)). The lower court in *Grant* had recognized that "as the age of the declarant decreases, the more elastic the elapsed time factor, within reason." *United States v. Grant,* 38 M.J. 684, 691 (A.F.C.M.R.1993)(citing *Iron Shell,* 633 F.2d at 86), *aff'd on other grounds,* 42 M.J. 340 (1995).

Having carefully reviewed the record of trial, we agree with the reasons the military judge gave in support of his ruling. *See* Record at 354–57. Having been extremely happy at the prospect of returning home to her mother, M.D. was clearly disappointed to learn that she had to go back to the hospital and have the doctor examine her private parts again. While we surmise that part of the stress was M.D.'s disappointment that she would not be able to go home right away, we conclude, as did the military judge, that M.D. was responding to the excitement and stress of the original incident triggered by her anguish at realizing that she would have to return to the hospital for further treatment. Ms. Riddle described the child's demeanor as "hysterical." We doubt whether a young child in that condition could rationalize a fabrication. We note that her statement to Ms. Riddle was completely spontaneous, and was not in response to any questions whatsoever. *See United States v. Kelley,* 45 M.J. 275, 281 (1996). Therefore, we conclude that the military judge did not abuse his discretion in ruling that the statement was admissible under Military Rule of Evidence 803(2). *See United States v. Houser,* 36 M.J. 392, 397–98 (C.M.A.1993).

However, even if we are wrong and a reviewing court were to determine that the military judge had abused his discretion in admitting this statement under the excited-utterance exception, it was admissible on another basis. In *Grant,* our higher court concluded that a 2–day delay between the sexual assault and the child victim's excited report, along with other circumstances, rendered the Military Rule of Evidence 803(2) exception inapplicable. However, the court then concluded that the statement was admissible under Military Rule of Evidence 803(24). *Grant,* 42 M.J. at 343. Our higher court continued:

> [The child's] mental state, even if not qualifying as 'stress of excitement' under Mil. R.Evid. 803(2), strongly suggested trustworthiness. Other circumstances of her statement also indicated trustworthiness. She spontaneously initiated the conversation. *See Idaho v. Wright,* 497 U.S. [805, 821, 110 S.Ct. 3139, 3149–50, 111 L.Ed.2d 638 (1990) ] . . . [There was no suggestive questioning.] Finally, [the child's] statements were corroborated by [other evidence.]

*Id.* at 343–44 (citations omitted). We will provide a more comprehensive analysis below of the residual hearsay rule in analyzing the military judge's ruling on other statements M.D. made when she was not in a state of excitement and agitation. *See* MIL.R.EVID. 803(24), 804(b)(5).

However, the same basic indicia of trustworthiness which the court highlighted in *Grant* exist in the present case. The circumstances of the statement, particularly the child's highly agitated mental state, the lack of any coaching or questioning, the spontaneity of the moment, and the strong corroboration based on the expert testimony which

pointed to abuse rather than accident, all point to the trustworthiness of M.D.'s revelation. *See Kelley,* 45 M.J. at 280–81; *see also United States v. Clark,* 35 M.J. 98 (C.M.A. 1992); *United States v. Dunlap,* 25 M.J. 89 (C.M.A.1987). The military judge ruled correctly in admitting the hearsay statement M.D. made to Ms. Riddle on 14 November 1994.

**M.D.'s Statements to Ms. Merfalen and the Residual Hearsay Exceptions**

As part of his motion *in limine,* the appellant also moved to prevent the introduction of various inculpatory hearsay statements M.D. made to Ms. Merfalen on 14 and 15 November 1994. Ms. Merfalen was M.D.'s representative from the local Child Protective Services. After considering much relevant evidence, reviewing the briefs of the parties, and hearing argument, the military judge ruled that these statements would be admissible under the residual hearsay exception only if the Government were able to establish M.D.'s unavailability to testify at trial. Record at 354–57. *See* MIL.R.EVID. 804(b)(5).[4]

Under either of the so-called residual hearsay exceptions, the following types of hearsay evidence are admissible:

A statement not specifically covered by any of the foregoing exceptions [to the rule against hearsay] but having *equivalent circumstantial guarantees of trustworthiness,* if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence . . . .

MIL.R.EVID. 803(24), 805(b)(5)(brackets and emphasis added).

4. M.D. eventually appeared at trial. However, she was totally unresponsive, even after the military judge took extraordinary steps to make her comfortable. The military judge ruled that she was not available. Record at 590.

5. Appellate Exhibit XIX is the appellant's 70–page motion *in limine.* Enclosure B is Ms. Mer-

Here again, the military judge must determine whether the evidence is admissible. MIL.R.EVID. 104(a). Moreover, he has considerable discretion to determine the trustworthiness and admissibility of a statement under the residual hearsay exception. His determination to admit evidence under this exception normally will not be reversed except for an abuse of that discretion. *United States v. Powell,* 22 M.J. 141, 145 (C.M.A. 1986). After considering the circumstances under which these statements were given, we conclude that the military judge did not abuse his discretion.

While waiting in the hospital to see the doctor, Ms. Merfalen asked M.D. what she had told Ms. Riddle about what happened to her. After being prompted a couple of times, M.D. answered: "My Daddy hurt me and I don't want to talk about it anymore . . . ." Record at 169. The next day Ms. Merfalen was driving M.D. to a scheduled appointment with her mother. Appellate Exhibit XIX, at 41.[5] M.D. asked Ms. Merfalen if her father was going to be there. Ms. Merfalen asked if she wanted him to be there; M.D. said no. When asked whether something had happened to make her feel that way, M.D. indicated yes. *Id.* at 42; *see* Prosecution Exhibit 27. A moment later, the following dialogue took place:

I stated, "What happened?"

[M.D.] stated, "He hurt me."

I stated, "Who hurt you."

[M.D.] stated, "My Dad."

I then asked, "Daddy hurt you?"

[M.D.] then nodded up and down. She was again reminded to use her words in order to understand what she was trying to say.

I asked again, "You said daddy hurt you?"

[M.D.] stated, "Yes."

I stated, "How did daddy hurt you?"

falen's contemporaneous case notes, which the appellant requested the military judge consider on the motion.

Eventually the Government introduced, without objection, the case notes Ms. Merfalen prepared soon after this conversation took place. *See* Prosecution Exhibit 27.

[M.D.] stated, "He stick it in."

I stated, "What did he stick in."

[M.D.] stated, "My toy broom."

I stated, "Where did he stick the toy broom?"

[M.D.] then responded by pointing down to her pubic area.

I asked, "What do you call that part of your body?"

[M.D.] stated, "My pookie." (Pookie was identified to be her vaginal area.)

*Id.* This evidence is obviously both inculpatory and relevant. It is also clearly hearsay; the Government intended to introduce the statements through Ms. Merfalen, rather than the declarant, who was the only one with first-hand knowledge of the incident.

The Confrontation Clause of the Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witnesses against him." U.S. CONST. amend. VI. "[I]t is the literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause...." *California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970). If at all possible, the Government must produce witnesses against the defendant at trial. *See Barber v. Page*, 390 U.S. 719, 723, 88 S.Ct. 1318, 1321, 20 L.Ed.2d 255 (1968).

In *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the U.S. Supreme Court set out a two-part test to balance the Confrontation Clause when deciding the admissibility of residual hearsay:

"First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." ... Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent

a showing of particularized guarantees of trustworthiness."

*Wright,* 497 U.S. at 814–15, 110 S.Ct. at 3146 (quoting *Ohio v. Roberts*, 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (footnote and other citations omitted)).

In the instant case, M.D.'s availability to testify was uncertain. The military judge ruled, therefore, that these hearsay statements would only be admissible if and when her unavailability was established. When finally placed on the stand, despite great efforts to make her as comfortable as possible, M.D. could not even be sworn in as a witness. After establishing an excellent record on this point, the military judge ruled correctly that M.D. was unavailable. Record at 590. The first prong of *Wright* was met.

The military judge was convinced that the second prong of *Wright*, as well as the other requirements of the residual hearsay rule, were met as well. Although the decision must have been a close call, we see no abuse of discretion. *See United States v. Pollard*, 38 M.J. 41, 49 (C.M.A.1993); *see also Houser*, 36 M.J. at 397–98. In determining whether the statement had "particularized guarantees of trustworthiness," *Wright*, 497 U.S. at 815, 110 S.Ct. at 3146, we considered the factors our superior court listed in *United States v. Ureta*, 44 M.J. 290 (1996):

Examples of circumstances that may be considered, when the declarant is unavailable, include spontaneity, consistent repetition, mental state of the declarant and lack of motive to fabricate. [*Wright,*] 497 U.S. at 821 [110 S.Ct. at 3149–50].... In addition, use of open-ended, non-leading questions; repeated emphasis on truthfulness; and declarations against the declarant's interest (*e.g.*, not being able to go back home) tend to support trustworthiness of the declaration.

*Ureta,* 44 M.J. at 296 (some citations omitted); *see also Kelley*, 45 M.J. at 280–81.

In entering his essential findings of fact and conclusions of law, the military judge found many of these factors to be present. Certainly the original statement M.D. made to Ms. Riddle was completely spontaneous. The military judge found that this statement

was "not accusatory, but rather intended by the declarant to help her protect the accused...." Record at 355. M.D. was consistent in her repetition of that story over the next 2 days. Her mental state at the time of the original revelation demonstrated little capacity for duplicity. Her statements to Ms. Merfalen, while not spontaneous (indeed, she did not want to go into the matter), were in response to open-ended, non-leading questions. The military judge correctly ruled that these statements had appropriate circumstantial guarantees of trustworthiness and were admissible if the child were unavailable to testify.

We note that the military judge's ruling relied heavily on the medical evidence corroborating the reliability of the child's hearsay statements. The judge stated on the record: "Finally, and **most importantly**, there is ... the heavy weight of the medical evidence to support it [the trustworthiness of these 14 and 15 November hearsay statements]." Record at 356 (emphasis added); *see id.* at 355 (M.D.'s hearsay statement "is consistent with the expert testimony of Dr. Craig who examined the injury and determined that abuse was the most likely cause....").

In *Wright*, a 5-4 majority of the Supreme Court noted: "To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." 497 U.S. at 822, 110 S.Ct. at 3150 (citation omitted). The majority opinion continued: "The use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." *Id.* at 823, 110 S.Ct. at 3150.

Our superior court subsequently analyzed the constitutional issue discussed in *Wright*

in *United States v. McGrath*, 39 M.J. 158 (C.M.A.1994). That opinion considered whether it was appropriate for the lower court to evaluate corroborating evidence to support the admissibility of out-of-court statements of a child victim unwilling to testify fully at trial. *Id.* at 164. The court opined: "The Supreme Court has not definitively ruled on whether corroboration is one of the circumstances which may be used to assure the trustworthiness of hearsay under the rules of evidence...." *Id.* at 166. In reaching its holding that the military judge did not err in considering corroborating evidence to support the trustworthiness of the hearsay statement under the residual hearsay exception, it continued: "We have previously sided with those courts holding that corroboration by other evidence is one of the means by which hearsay evidence can be tested for trustworthiness.... Pending clarification to the contrary by the Supreme Court, we adhere to that view." *Id.* at 166–67 (footnote and citations omitted).

Our higher court has required that the military judge state on the record the specific facts and circumstances which he thinks indicate that the hearsay statements have a sufficiently high decree of trustworthiness and necessity to justify their admission. *United States v. Hines*, 23 M.J. 125, 135 (C.M.A.1986). This is because the reliability of the hearsay statement must be "very high indeed to satisfy the residual hearsay exceptions." *McGrath*, 39 M.J. at 166–67 n. 10. In the instant case, the military judge provided a detailed and persuasive justification, albeit largely based on the corroborating medical evidence. Under the *McGrath* analysis, both his predicate and his ruling were correct.

Moreover, we are confident that the basic purpose of the Confrontation Clause was fully satisfied in this case and that cross-examination of M.D. would have been of only "marginal utility." *Wright*, 497 U.S. at 823, 110 S.Ct. at 3150. The appellant was able to introduce, through cross-examination of the Government's expert, testimony of his own expert, a summarized statement which M.D. made to Ms. Merfalen the day following the

incident,[6] the testimony of Ms. Mahony, Head of the Social Work Department, Naval Hospital, Guam, and the testimony of his ex-wife, that M.D. had early on, and several times since (including at the time of the trial), provided an alternative (accidental) explanation of her injuries. In a decision published 3 years after *Wright* (which analyzed that decision in extensive detail), this court determined that if the Confrontation Clause is otherwise satisfied, military judges have the discretion to consider all circumstances, including corroborating evidence, in deciding whether residual hearsay evidence possesses the requisite circumstantial guarantees of trustworthiness to justify its admission. *United States v. Martindale*, 36 M.J. 870, 881 (N.M.C.M.R.1993).

The assigned error concerning the military judge's decision to admit M.D.'s inculpatory hearsay statements is without merit.

### Admission of Statements Taken in Violation of the Appellant's Article 31 Rights

In his second assignment of error, the appellant contends that the military judge erred when he denied appellant's motion to suppress statements taken in violation of his rights under Article 31, UCMJ, 10 U.S.C. § 831. We disagree.

During a permissive search of his house in the early morning hours of 7 November 1994, the appellant made various statements concerning what had happened leading up to and following the incident in which M.D. was injured. While none of them were incriminating and they were not reduced to a writing, the trial counsel introduced them before the members through the testimony of the NCIS agents who were present when he made them. Moreover, the Government made good use of them at trial to provide a possi-

ble motive for committing the crime (he was extremely angry with his wife, whom he strongly suspected of cheating on him) and what appeared to be a contrived story of how he came to learn of M.D.'s injuries and his response.[7]

■ Article 31, UCMJ, 10 U.S.C. § 831, requires military investigators to give rights warnings only when they "reasonably should suspect" a person of having committed a particular crime. . *United States v. Schake*, 30 M.J. 314, 317 (C.M.A.1990). "Whether a person being interviewed is a 'suspect' is a question of law." *Id.* "The test to be applied is an objective test asking whether a reasonable person should consider appellant to be a suspect under the totality of the circumstances." *United States v. Meeks*, 41 M.J. 150, 161 (C.M.A.1994)(citing *United States v. Leiffer*, 13 M.J. 337, 343 (C.M.A. 1982)). However, the fact that someone has, or might reasonably have, "a hunch" that a crime has been committed does not trigger the obligation to provide the warnings. *Meeks*, 41 M.J. at 161. Rather, "[t]he suspicion must have crystallized to such an extent that a general accusation of some recognizable crime can be framed." *United States v. Haskins*, 29 C.M.R. 181 (1960).

■ In the instant case, both of the NCIS agents testified that on 7 November 1994, they did not believe that the appellant was a "suspect" within the meaning of Article 31, UCMJ, 10 U.S.C. § 831. Record at 185, 209. Indeed, they both appeared to have accepted the version of events based on what the appellant (and M.D.) told the doctor at the hospital. Moreover, they discovered nothing during the course of their permissive search and contemporaneous interview to reach a different conclusion. Well trained

---

6. *See* Defense Exhibit D. The appellant made a pretrial motion to admit M.D.'s statement to Ms. Merfalen on 7 November 1994 as to how she had been injured. Appellate Exhibit XVII. Although the military judge ruled that it was hearsay, he nonetheless admitted it in the interests of justice.

7. No doubt particularly damaging to the appellant's position were some of his bizarre actions and statements. Evidence was admitted from the treating physician, Dr. Ralston, by means of a

stipulation of expected testimony, that while he was examining M.D. in her step-father's presence, the appellant repeated, some 20 times, an unintelligible and unexplained expression which sounded like "COT–TUR." Prosecution Exhibit 5. Moreover, the appellant told Special Agent Brady two things which struck her as unusual: (1) that M.D. was trying to use a sanitary napkin to control the bleeding; and (2) that he thought M.D. might have stuck the mop handle into her vagina because she was "horny." Record at 414–17.

and experienced, they testified that they would have given the appellant his rights warnings had they suspected him of child abuse. Moreover, they would not have interviewed him in his home or permitted him to participate in the search had he been a suspect. Instead, they would have taken him into their office and attempted to obtain a written statement. Record at 186, 201, 203.

The appellant points out that the NCIS agents wrote in the phrase "Suspected child abuse" on the permissive search authorization form. As Special Agent Daley explained, however, he had to list something criminal, "within the ballpark," on the form, and that was the closest thing he could think of. Record at 207–08. We also note that the appellant, who had training and experience in law enforcement, affirmatively stated on cross-examination that he did not consider himself a suspect at the time. Moreover, nothing the NCIS agents said or did led him to believe that they considered him to be a criminal suspect. Record at 215–16.

After hearing testimony from the NCIS agents and the appellant, reviewing other evidence, and considering the comprehensive briefs of the parties, the military judge entered essential findings of fact and conclusions of law. He concluded that the appellant was not a suspect at the time of the permissive search of his home on the morning of 7 November 1994 and that, therefore, the NCIS agents were under no obligation to give him Article 31(b) warnings. Record at 254–56. Applying a *de novo* standard to that factual and legal question, we conclude that the military judge ruled correctly. *United States v. Good*, 32 M.J. 105, 108 (C.M.A. 1991). This assignment of error is without merit.

### Legal and Factual Insufficiency

■ In the first of seven summary assignments of error, the appellant contends that the evidence is factually and legally insufficient to prove appellant committed this assault. After carefully reviewing the record of trial, we disagree. We are convinced beyond a reasonable doubt of the appellant's guilt of this offense.

Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this court to determine the legal and factual sufficiency of the evidence. Although the appellant suggests in his brief that the evidence was legally insufficient, he provided no analysis and we conclude that there is no question as to the legal sufficiency.

The test for factual sufficiency on appeal is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

The appellant argues that the evidence is factually deficient for several reasons. He points out that his expert witness, Dr. Dully, testified that M.D.'s injury was "very possibly the result of an accident." Brief and Assignment of Errors at 20. Indeed, earlier in his brief he took the position that Dr. Dully had "testified that she thought this was an accidental injury." *Id.* at 5–6. We disagree with the appellant's characterization of the testimony Dr. Dully gave at trial. Just after she took the stand to testify for the defense, Dr. Dully testified that, although M.D.'s injuries are "typical" of "rape with an object, it is not utterly, absolutely impossible for this type of injury to have occurred during an impalement activity, during play." Record at 475. Although later Dr. Dully testified that she was "concerned that there is a reasonable possibility that this was an accidental straddle injury ...", Record at 496, and, when recalled later, that she remained "concerned" that this might have been an accidental injury, Record at 550, 558, we find insufficient support in the record for the factual position that the appellant took in his brief. Indeed, a fair reading of the record of all of her testimony is that this was most probably a case of child sexual abuse. *See* Record at 484, 487.[8]

The appellant also argues that since the handle of the toy mop only had to penetrate into her vagina a very short distance, a rea-

---

8. Although this particular testimony came out during the motion phase of the trial, we also note that Dr. Dully concluded that "there's only three

to four chances out of hundred that it [M.D.'s injury] happened accidentally." Record at 301.

sonable explanation for M.D.'s injury was accident. However, the compelling testimony of Dr. Craig (supported in large measure by Dr. Dully), was that an accidental explanation for the injury was only a theoretical possibility. *See* Record at 447–50, 459. This was because of the complete absence of any external trauma to M.D.'s vaginal area. *See* Record at 533–36. Moreover, both experts agreed that this injury would have been exquisitely painful and would almost certainly have caused her to scream out in agony. The appellant told the investigators, only hours after the incident, that he had not heard his stepdaughter cry out in any way. Record at 378.

Finally, the appellant contends that the evidence does not support a finding of guilt because M.D. told several different people, over a long period of time, that her injury was the result of an accident. We do not discount this evidence, including the stipulation of expected testimony of Lieutenant Eid, who recalled M.D.'s statement when she was initially treated that she did not want to get into any "trouble for putting the broom in her puki." Record at 472; *see* Defense Exhibit C. We have also carefully considered, as did Drs. Craig and Dully, M.D.'s drawings which apparently showed her father upstairs at the time she injured herself. Defense Exhibits B and E; *see* Prosecution Exhibit 26.

Based on the entire record, however, we are convinced, as were the members, that M.D.'s statements which implicated her stepfather in this criminal offense were reliable. *See, e.g.,* Record at 398, 411; Prosecution Exhibits 20 (documenting M.D.'s initial disclosure to Ms. Riddle), 27 (documenting M.D.'s statements to Ms. Merfalen). Dr. Craig, an expert in the field, explained the stages of denial, limited disclosure, and recantation in many cases of child sexual abuse she had studied; this typical sequence tracked what she observed in M.D.'s case. Record at 533. *See United States v. Rynning,* 47 M.J. 420 (1998). Moreover, both doctors testified that neither knew of any case where a child, who had accidentally injured herself, contrived an explanation which implicated another person in child abuse. *See* Record at 484 (Dr. Dully during cross-examination), 535 (Dr. Craig). Finally, the extensive testimony of both doctors indicates that, based on the nature and location of the injury, and the other factors they considered, the most probable explanation was that the injury to M.D. was the result of another person inserting a foreign object into her vagina. There is no evidence that anyone but the appellant had access to the child at the time she sustained this injury.

Having carefully considered the entire record of trial, we are convinced beyond a reasonable doubt of the appellant's guilt of this offense. This summary assignment of error is without merit.

### Failure to Address Alleged Legal Error in the Staff Judge Advocate's Recommendation

The appellant next contends that the staff judge advocate (SJA) erred when she failed to address the merits of the appellant's assertion that the previous SJA, who was serving temporarily, was disqualified from participation in the case because he might have discussed the case with his defense counsel. Even if there were merit in the contention, we conclude that it is unnecessary to return this case for a new action because it would not possibly have resulted in any corrective action by the convening authority. *United States v. Hill,* 27 M.J. 293, 297 (C.M.A.1988). Moreover, the convening authority specifically stated in his action that he had considered the appellant's clemency petition, which contained the same allegation. This assignment of error is without merit.

### Ambiguous Sentence Concerning Forfeitures

The appellant next contends that the portion of his sentence concerning forfeitures was ambiguous and that this court should affirm only forfeitures in the amount of $854.40.

In sentencing the appellant, the president of the court-martial announced, in relevant part, that the appellant "**forfeit all pay and allowances, which is $854.40 for 2 years....**" Record at 652 (emphasis in original). In his order, the convening authority repeated this sentence and, in his action,

purported to approve it. We find this approved sentence to be ambiguous.

Although a convening authority may return an ambiguous matter to the court-martial "for clarification," if he does not do so, he has an obligation to "approve a sentence no more severe than the legal, unambiguous portions of the adjudged sentence." R.C.M. 1009(d); *see generally* R.C.M. 1107(d)(1). Although we are confident that the members of this court-martial intended that the appellant lose all his pay and allowances, the Government has cited no authority whatsoever for the proposition that the court may affirm a sentence which is, on the face of it, ambiguous at best and which specifies forfeitures of a specific dollar amount. We could return the action to the convening authority to resolve the ambiguity. R.C.M. 1107(g). However, that would require the convening authority to return the matter to the court-martial or to approve a sentence no more severe than the unambiguous portion. R.C.M. 1009(d). We decline to do so.

In the interests of judicial economy, therefore, we will affirm only the unambiguous portion, specified in a whole-dollar amount. The Government should return to the appellant any forfeitures taken from him in excess of the unambiguous sentence. We will provide appropriate relief in our decretal paragraph.

## Opinion Testimony of Special Agent Brady

■ The appellant next contends, in a summary assignment of error, that the military judge erred in permitting Special Agent Brady to testify, over his objection, that the appellant should have been able to hear M.D. if she had fallen down the stairs.

Although this was the only question the trial counsel asked the witness during her surrebuttal testimony, Special Agent Brady had earlier testified that she had conducted a search of the house and knew its layout and its acoustical characteristics. Under Military Rule of Evidence 701, the testimony of a lay witness "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness of the determination of a fact in issue."

After the appellant's objection was overruled, the witness explained that, based on what he had told her, and since she had herself lived in a house with a similar layout, that he should have been able to "hear both the fall and a scream...." Record at 583. We conclude that this testimony was rationally related to her perceptions and helpful to the trier-of-fact. The appellant was able to develop evidence from which to argue that, with the washing machine, dryer, and, perhaps, television on, he might not have heard anything. The military judge's decision to permit this answer was not an abuse of discretion. *Sullivan*, 42 M.J. at 363. The assignment of error is without merit.

## Principal Officers

We have carefully considered the appellant's final three summary assignments of error. For the reasons discussed in *United States v. Grindstaff*, 45 M.J. 634 (N.M.Ct. Crim.App.1997), *petition denied*, 47 M.J. 66 (1997), we find them all to be without merit.

## Testimony of the Expert on the Ultimate Issue

■ Although not raised as an assignment of error, we considered whether certain conclusory testimony Dr. Craig provided concerning the ultimate issue crossed the line of proper expert medical testimony.

At one point, in wrapping up her testimony on direct, the trial counsel asked her: "In your expert opinion, Captain Craig, would you consider this injury a result of child sexual abuse." She answered: "Yes, I would." Record at 450. Later, on redirect, the trial counsel asked Dr. Craig to provide her "assessment" of the case. She answered that it was her "opinion," based on all the evidence she had considered, "that this was a non-accidental ... inflicted injury." Record at 464. The appellant made no objection on either occasion.

In the recent case of *United States v. Birdsall*, 47 M.J. 404 (1998), our superior court held that it was prejudicial error for the military judge to permit, over objection, the prosecution expert to testify that the appellant's sons were the "victims of child

sexual abuse." *Id.*, 47 M.J. at 409. The court held that this testimony improperly invaded the province of the triers-of-fact. *Id.* at 408–09. *See United States v. Harrison*, 31 M.J. 330, 332 (C.M.A.1990); *see also United States v. Petersen*, 24 M.J. 283, 285 (C.M.A.1987). *But see* MIL.R.EVID. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.")

There are significant factual differences in the testimony of Dr. Craig in this case and the testimony of Dr. Hickey in *Birdsall.* We distinguish *Birdsall* from the instant case in large part because of those differences. Further, in *Birdsall,* the defense objected to the testimony of Dr. Hickey; in the instant case there was not a defense objection. Therefore, we review the matter under the plain-error standard. MIL.R.EVID. 103(d).[9]

Dr. Craig testified from medical evidence and case history as well as her own examination of the victim. Based on this evaluation, she testified that in her expert opinion the injury to the victim was the result of child sexual abuse and not the result of childhood accident or self-inflicted injury. Record at 450. She offered substantial rationale leading to those conclusions. In *Birdsall,* Dr. Hickey "opined that both children were victims of sexual abuse, notwithstanding a lack of physical evidence." *Birdsall,* 47 M.J. at 406. In the instant case the search for truth focused on how the injuries to M.D. occurred, not whether there was injury at all. Dr. Craig did not testify that M.D.'s statements were truthful. In fact, M.D. gave conflicting pretrial statements; the expert's role was to

help the factfinder select between them. Dr. Craig did not testify that the appellant was the individual who committed child sexual abuse. Her testimony, essentially, was that almost no possibility existed that the injuries could have been the result of any act other than the insertion of a foreign object into the vagina of M.D. The defense expert testimony conflicted only on the degree of the likelihood.

Our superior court's admonitions expressed once again in *Birdsall* on the use of expert testimony in child abuse cases are well taken. We fully agree that it is extremely important that if a trial is to be fair, it must be free from undue influence on the court members' role in determining the ultimate facts. In this case, however, we find no such undue influence, and no plain error, in the testimony.

### Conclusion

Accordingly, we affirm the findings. However, we affirm only so much of the sentence, as approved on review below, as provides for confinement for 2 years, forfeiture of $854.00 pay per month for 2 years,[10] reduction to the lowest enlisted pay grade, and a bad-conduct discharge.

Chief Judge GRANT and Judge SEFTON concur.

---

9. In *Birdsall,* a second expert testified that the accused's two sons were the victims of incest. In our superior court's view, this violated the proscription that an expert in a child-abuse case may not act as a human lie detector and usurp the court-members' exclusive function to weigh evidence and determine credibility. *Birdsall,* 47 M.J. at 410. The court did evaluate the testimony of this second expert under a plain error analysis as there had been no objection to the second expert's testimony.

10. This may require that the appellant be returned forfeitures taken from him in excess of the sentence which we have affirmed, and, if appropriate, we so direct.